1   LATHAM & WATKINS LLP
    Mark S. Mester (*Pro Hac Vice pending*)
2       mark.mester@lw.com
    Kathleen P. Lally (*Pro Hac Vice pending*)
3       kathleen.laly@lw.com
    330 North Wabash Avenue, Suite 2800
4   Chicago, Illinois  60611
    Telephone:  (312) 876-7700
5   Facsimile:  (312) 993-9767

6   LATHAM & WATKINS LLP
    David F. Kowalski (CA Bar No. 265527)
7       david.kowalski@lw.com
    12670 High Bluff Drive
8   San Diego, California 92130
    Telephone: (858) 523-5400
9   Facsimile:  (858) 523-5450

10  Attorneys for Defendant
    LEXINGTON LAW FIRM

11

12              **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  NATHAN HALE, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 3:15-CV-01676-LAB-JMA |
| 16 | |
| 17  Plaintiff, | CLASS ACTION |
| 18  v. | **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** |
| 19  JOHN C. HEATH, Attorney at Law, PLLC, d/b/a LEXINGTON LAW FIRM, | Judge: Hon. Larry Alan Burns |
| 20  Defendant. | Courtroom: 9, 2nd Floor |
| 21 | Hearing Date: November 23, 2015 |
| | Hearing Time: 11:15 a.m. |

22

23

24

25

26

27

28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
CHICAGO

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     <u>INTRODUCTION</u> ................................................................. 1

II.    <u>RELEVANT FACTUAL BACKGROUND</u> ................................ 1

     A.    Plaintiff Registers With Lexington And Agrees To Its Terms Of Use ...................................................................... 1

     B.    The Terms Of Use To Which Plaintiff Agreed Contain An Arbitration Provision.................................................... 3

     C.    Despite The Agreement To Arbitrate, Plaintiff Files His Class Complaint In Federal Court And Subsequently Refuses To Arbitrate His Claims ........................................ 4

III.   <u>DISCUSSION</u> ............................................................... 5

     A.    Plaintiff And Lexington Entered Into A Valid Arbitration Agreement ................................................... 7

     B.    This Dispute Plainly Falls Within The Scope Of The Arbitration Agreement And In Any Event, Any Disputes Regarding The Scope Of Arbitration Are Delegated To The Arbitrator ............................................................. 9

IV.   <u>CONCLUSION</u> ............................................................ 11

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
CHICAGO

i

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

AT&T v. Concepcion,
   131 S. Ct. 1740 (2011) ...................................................................6

Central Florida Invs., Inc. v. Parkwest Assocs.,
   2002 UT 3 (Utah 2002) ..................................................................9

Crawford v. Beachbody,
   2014 U.S. Dist. LEXIS 156658 (S.D. Cal. 2014) ...........................8

Davis v. Nordstrom,
   755 F.3d 1089 (9th Cir. 2014)........................................................5

Day v. Microsoft,
   2014 WL 243159 (W.D. Wash. 2014) ............................................8

Fischer v. Rent-A-Center,
   2014 WL 3729553 (E.D. Cal. 2014) ..............................................8

Hancock v. AT&T,
   701 F.3d 1248 (10th Cir. 2012)...............................................3, 7, 8

Imperial Sav. Ass'n v. Lewis,
   730 F. Supp. 1068 (D. Utah 1990) .................................................5

In the Matter of Rules and Regulations Implementing the
   Telephone Consumer Protection Act of 1991,
   27 F.C.C.R. 1830 (F.C.C. Feb. 15, 2012) .......................................2

Island Peak Ranch v. FIIK Inv.,
   2008 WL 2673925 (D. Utah 2008) .................................................7

Kilgore v. KeyBank,
   718 F.3d 1052 (9th Cir. 2013)........................................................7

Koyoc v. Progress Fin.,
   2014 WL 1878903 (C.D. Cal. 2014) ..............................................9

Lamkin v. Morinda Properties,
   2012 WL 2913257 (D. Utah 2012) .................................................6

Langston v. 20/20 Cos.,
   2014 WL 5335734 (C.D. Cal. 2014) ...........................................6, 7

Local 5-857 Paper, Allied-Industrial, Chem. & Energy Workers
   Int'l Union v. Conoco Inc., 320 F.3d 1123 (10th Cir. 2003) ...........6

Mariposa v. United Shipping Solutions,
   295 P.3d 1173 (Utah App. Ct. 2013)..............................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

ii

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

Mitsubishi v. Soler Chrysler-Plymouth,
    473 U.S. 614 (1985) ....................................................................6

Moore v. T-Mobile,
    2013 WL 6645011 (2d Cir. 2013) ...............................................9

Morales v. Cont'l Fin.,
    2009 WL 2579093 (D. Utah 2009) .............................................7

Moss v. McLucas,
    2013 WL 1680483 (S.D. Cal. 2013) .........................................11

Oracle v. Myriad,
    724 F.3d 1069 (9th Cir. 2013) ..................................................11

Rent-A-Center v. Jackson,
    561 U.S. 63 (2010) ....................................................................11

Sanchez v. Nitro-Lift,
    762 F.3d 1139 (10th Cir. 2014) .........................................6, 9, 10

Sherman v. AT&T,
    2012 WL 1021823 (N.D. Ill. 2012) .............................................8

Sherman v. RMH,
    2014 WL 30318 (S.D. Cal. 2014) ..............................................10

Steigerwalt v. Terminix,
    246 F. Appx. 798 (3d Cir. 2007) ................................................9

Stolt-Nielsen v. Animal Feeds Int'l Corp.,
    559 U.S. 662 (2010) ....................................................................4

Swift v. Zynga,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...............................3, 7, 8

THI of N.M. v. Patton,
    741 F.3d 1162 (10th Cir. 2014) ...............................................5, 6

United States v. Marubeni Corp.,
    592 Fed. Appx. 642 (9th Cir. 2015) ........................................5, 6

Vernon v. Qwest,
    925 F. Supp. 2d 1185 (D. Colo. 2013) .......................................8

Walker v. BuildDirect.com,
    733 F.3d 1001 (10th Cir. 2013) ...............................................5, 6

## STATUTES

47 U.S.C. § 227....................................................................................4

9 U.S.C. § 2.........................................................................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

iii

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1    Defendant John C. Heath, Attorney at Law, PLLC, d/b/a/ Lexington Law

2  Firm ("Lexington") respectfully submits the following memorandum in support of

3  its motion to compel arbitration and dismiss or stay the Complaint filed by Plaintiff

4  Nathan Hale ("Plaintiff"):

5              **I.      INTRODUCTION**

6    In requesting a free credit repair consultation from Lexington, Plaintiff

7  expressly consented to being bound by the terms of certain agreements.  One of

8  those agreements -- the Terms of Use -- contains an arbitration clause requiring

9  Plaintiff to arbitrate "any claim" between Plaintiff and Lexington, including claims

10  alleging violations of state or federal statutory law.  Moreover, this agreement

11  requires arbitration of any disputes regarding the scope of the arbitration provision

12  itself.

13    As has been repeatedly recognized, both federal and state law strongly favor

14  arbitration in cases such as this, where the Plaintiff has entered into a valid and

15  enforceable agreement to arbitrate and the claims contained in the Complaint

16  clearly fall within the scope of that agreement.  In accordance with that strong

17  policy favoring arbitration and in conformance with the arbitration provision to

18  which Plaintiff agreed, Lexington respectfully requests that the Court compel

19  arbitration of Plaintiff's claims and dismiss or stay this action.

20          **II.      RELEVANT FACTUAL BACKGROUND**

21    The factual background relevant to this motion is set forth below.  See disc.

22  infra at 1-5.[1]

23          **A.    Plaintiff Registers With Lexington**
          **And Agrees To Its Terms Of Use**
24

25    On or about March 11, 2015, Plaintiff visited the website web2carz.com,

26  ostensibly seeking information about a car loan.  See Declaration of John C. Heath

27  ─────────────────
[1]    Unless stated otherwise, all emphasis is supplied and all internal citations and
28  quotations are omitted from any quoted material herein.

1   ("Heath Decl."), Ex. 1, at ¶¶ 4-5 & Ex. A (web2carz.com screenshots).  Upon

2   submitting his loan request to web2carz.com, Plaintiff was directed to a website

3   acknowledging that request and further asking if he would like to contact or be

4   contacted by a representative from Lexington regarding information about credit

5   repair.  See id. at ¶¶ 6-9 & Ex. B (Registration Page) & Ex. C (Plaintiff's Account)

6   (showing "Lead Source" as web2carz.com).  Plaintiff completed the registration

7   form, providing his name, email address, mailing address and personal and work

8   phone numbers and clicked "Get Your Free Consultation."  See id.  By seeking his

9   free consultation, Plaintiff expressly acknowledged that he "agree[d] by electronic

10  signature to . . . the Privacy Policy and Terms of Use."  See id. at ¶ 10 & Ex. B

11  (Registration Page).[2]

12       Indeed, the clause advising Plaintiff that he was agreeing to the Terms of

13  Use appeared directly above the link Plaintiff was required to click, was in the

14  same font color and size as the rest of the text on the registration page and included

15  a highlighted hyperlink to each of the referenced documents, including the Terms

16  of Use.  See Heath Decl., Ex. 1, at ¶ 10 & Ex. B (Registration Page).  In no event,

17  however, would Plaintiff or any member of his proposed class have been able to

18  register with Lexington over the website and receive a free credit consultation

19  without first agreeing to the Privacy Policy and Terms of Use.  See id. at ¶¶ 10-11

20  _____

21  [2]    In full, the acknowledgment provided directly above the link to click to "Get
    Your Free Consultation" advises consumers that:

22        By clicking 'Get Your Free Consultation' I agree by electronic signature
          to: (1) be contacted by Lexington Law Firm about credit repair or credit

23        repair marketing by a live agent, artificial or prerecorded voice, and SMS
          text at my residential or cellular number, dialed manually or by autodialer,

24        and by email (consent to be contacted is not a condition to purchase
          services); and (2) the Privacy Policy and Terms of Use.

25  Heath Decl., Ex. 1, at ¶ 10 & Ex. B (Registration Page).  As such, even if
    arbitration were not appropriate, Plaintiff's consent to receive both phone calls and

26  SMS texts from Lexington seriously calls into question his claim that Lexington
    somehow violated the TCPA.  See, e.g., In the Matter of Rules and Regulations

27  Implementing the Telephone Consumer Protection Act of 1991, 27 F.C.C.R. 1830,
    1843-44 (F.C.C. Feb. 15, 2012) (discussing prior express consent as a complete

28  defense to TCPA claims).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

2

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1  & Ex. B (Registration Page).[3]

2
3
## B.   The Terms Of Use To Which Plaintiff Agreed Contain An Arbitration Provision

4       The Terms of Use to which Plaintiff agreed govern all aspects of Plaintiff's

5  registration with and use of Lexington's services, including use of Lexington's

6  website, requests to be contacted by Lexington regarding credit repair services,

7  participation in Lexington's "Text Message Program" and any engagement of

8  Lexington's legal services.  See Heath Decl., Ex. 1, at ¶ 12 & Ex. D (Terms of

9  Use).  Moreover, the Terms of Use contain an arbitration agreement, which

10  specifies that it is governed by the Federal Arbitration Act ("FAA") and otherwise

11  states as follows:

12
13
14
15
16
17
18
19
20
21
22
23
24
25
BY USING LEXINGTON'S WEBSITE, ENGAGING LEXINGTON'S LEGAL SERVICES, REQUESTING THAT LEXINGTON CONTACT YOU ABOUT ITS CREDIT REPAIR SERVICES, AND/OR PARTICIPATING IN LEXINGTON'S TEXT MESSAGE PROGRAM, **YOU AGREE TO ARBITRATE ALL CLAIMS BETWEEN YOU AND LEXINGTON ON AN INDIVIDUAL BASIS ONLY AND NOT AS A PART OF ANY CLASS. A 'CLAIM' IS ANY CASE, CONTROVERSY, DISPUTE, TORT, DISAGREEMENT, LAWSUIT, LEGAL ACTION, OR CLAIM NOW OR HEREAFTER PENDING BETWEEN YOU AND LEXINGTON, INCLUDING BUT NOT LIMITED TO ANY ALLEGED STATE OF FEDERAL STATUTORY VIOLATION, OR ANY DISPUTE OVER THE INTERPRETATION OF THE WEBSITE TERMS OR THE ARBITRABILITY OF ANY CLAIM PURSUANT TO THE WEBSITE TERMS. THIS AGREEMENT TO ARBITRATE GOVERNS ALL PAST, CURRENT AND PROSPECTIVE INTERACTIONS WITH LEXINGTON. YOU AGREE THAT YOU ARE WAIVING ALL RIGHTS TO: (A) A TRIAL BY JURY; (B) PARTICIPATE IN A CLASS ACTION LAW SUIT OR CLASS ACTION ARBITRATION; AND (C) BRING AN ACTION AGAINST LEXINGTON IN A COURT OF LAW. YOU MAY INDIVIDUALLY ARBITRATE ANY CLAIM AGAINST LEXINGTON IN ANY JURISDICTION IN THE UNITED STATES. LEXINGTON WILL REIMBURSE YOU UP TO $300 OF YOUR ARBITRATION FILING FEE. THE RULES**

26
27
28
---
[3]   As discussed in more detail below, courts routinely hold that agreements (including arbitration agreements) that a customer agrees to by affirmatively clicking on a dialogue box are valid and enforceable.  See, e.g., Hancock v. AT&T, 701 F.3d 1248, 1255-58 (10th Cir. 2012); Swift v. Zynga, 805 F. Supp. 2d 904, 910-12 (N.D. Cal. 2011); disc. infra at 7-8.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

3

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1
2
3
4
5
6
7
8

**OF THE AMERICAN ARBITRATION ASSOCIATION THEN IN FORCE SHALL GOVERN THE ARBITRATION** (provided, however, that the terms of the Website Terms shall control over any inconsistency between the Rules of the American Arbitration Association and the Website Terms). The arbitrator shall have authority to interpret the Website Terms, including but not limited to the authority to decide whether any claim is arbitrable under the Website Terms and to decide issues related to the scope of arbitration, the rules of arbitration, the arbitrator's jurisdiction, and the enforceability of the Website Terms. You agree that the Website Terms involves commerce under 9 U.S.C. §§ 1 et seq. and that this Arbitration Clause is governed by federal law, including the Federal Arbitration Act. The remainder of the Website Terms is governed by the laws of the state of Utah, as provided in Section 17 below.

9  Id. at Ex. D (Terms of Use) (emphasis in original).

10  As can be seen by the foregoing, the arbitration agreement is detailed.  See

11  Heath Decl., Ex. 1, at Ex. D (Terms of Use).  Not only does it broadly require

12  Plaintiff to arbitrate "all claims between [Plaintiff] and Lexington," but it also

13  clearly and unambiguously identifies that the arbitration will take place on an

14  individual (rather than class) basis and that Plaintiff has waived all rights to file a

15  claim in court, to have a trial by jury and to participate in a class action.  See id.;

16  see also, e.g., Stolt-Nielsen v. Animal Feeds Int'l Corp., 559 U.S. 662, 684-87

17  (2010) (class arbitration is not permitted in the absence of an express agreement to

18  arbitrate class claims).  It further specifies the governing arbitration rules,

19  Plaintiff's financial obligations and that any disputes regarding arbitrability and the

20  scope of arbitration are delegated to the arbitrator.  See Heath Decl., Ex. 1, at Ex.

21  D (Terms of Use).

22
23

**C.   Despite The Agreement To Arbitrate, Plaintiff Files His Class Complaint In Federal Court And Subsequently Refuses To Arbitrate His Claims**

24  On or about July 28, 2015, Plaintiff filed his Complaint in this Court,

25  alleging that on March 13, 2015, Lexington called Plaintiff on his cellular

26  telephone using an automatic telephone dialing system without his prior consent

27  and purportedly in violation of the Telephone Consumer Protection Act, 47 U.S.C.

28  § 227 ("TCPA").  See Compl. (Dkt. #1) at ¶¶ 11-19, 32-39.  Based on these

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

4

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1  allegations and without regard to the arbitration agreement or class waiver,

2  Plaintiff seeks certification of a class of "[a]ll persons within the United States who

3  received any telephone call from [Lexington] or [its] agent/s and/or employee/s,

4  not sent for emergency purposes, to said person's cellular telephone made through

5  the use of any automatic telephone dialing system and/or with an artificial or

6  prerecorded message."  See id. at ¶ 21.

7          Lexington was served with Plaintiff's Complaint on or about August 3,

8  2015.  See Summons (Dkt. #4).  Shortly thereafter, Lexington retained counsel,

9  who immediately began investigating the facts of this case and determined that the

10  matter was governed by the arbitration agreement.  See disc. supra at 1-4.

11                        **III.   DISCUSSION**

12          There is a strong policy under both federal and Utah law in favor of

13  arbitration.  See, e.g., Davis v. Nordstrom, 755 F.3d 1089, 1092 (9th Cir. 2014);

14  THI of N.M. v. Patton, 741 F.3d 1162, 1165-66 (10th Cir. 2014); Imperial Sav.

15  Ass'n v. Lewis, 730 F. Supp. 1068, 1071 (D. Utah 1990).[4]  The strong federal

16  _____

17  [4]    Questions regarding the validity and enforceability of an arbitration agreement
   are generally governed by state law.  See, e.g., United States v. Marubeni Corp.,
18  592 Fed. Appx. 642, 643 (9th Cir. 2015) ("When determining whether parties have
   agreed to submit to arbitration, we apply general state-law principles of contract
   interpretation, while giving due regard to the federal policy in favor of arbitration
19  by resolving ambiguities as to the scope of arbitration in favor of arbitration.");
   Walker v. BuildDirect.com, 733 F.3d 1001, 1004 (10th Cir. 2013) ("Generally,
20  courts should apply ordinary state-law principles that govern the formation of
   contracts to determine whether a party has agreed to arbitrate a dispute.").  As
21  noted above, the Terms of Use contain a choice of law clause stating that they are
   governed by federal law, the FAA and the laws of the State of Utah.  See Heath
22  Decl., Ex. 1, at Ex. D (Terms of Use).  As such, Lexington cites herein federal law
   with respect to the arbitration clause as well as Utah law to the extent appropriate
23  and available.  See disc. infra at 5-11.  Importantly, however, the ability of state
   law to invalidate an arbitration agreement is limited by the FAA and federal law:
24          Although [the FAA] provides that a written arbitration agreement
25          'shall be valid, irrevocable, and enforceable, save upon such
            grounds as exist at law or in equity for the revocation of any
26          contract' . . . it preempts state-law rules that 'stand as an obstacle
            to the accomplishment of the FAA's objectives,' as by
27          'interfer[ing] with fundamental attributes of arbitration[.]'

   Walker, 733 F.3d at 1004-05; see also, e.g., Concepcion , 131 S.Ct. at 1750-53
28  (holding that California's "Discover Bank Rule," which allowed consumers to
   (continued...)

1  policy in favor of arbitration is manifested in the FAA, which, in turn, provides

2  that an agreement to arbitrate "shall be valid, irrevocable, and enforceable."  9

3  U.S.C. § 2; see also THI, 741 F.3d at 1165.  In point of fact, the FAA was enacted

4  by Congress to reverse perceived judicial hostility toward arbitration agreements.

5  See AT&T v. Concepcion, 131 S.Ct. 1740, 1747 (2011) ("[T]he judicial hostility

6  towards arbitration that prompted the FAA had manifested itself in 'a great variety'

7  of 'devices and formulas' declaring arbitration against public policy."); THI, 741

8  F.3d at 1165.

9       Accordingly, a party seeking to compel arbitration simply needs to

10  demonstrate "(1) the existence of a valid, written agreement to arbitrate in a

11  contract; and (2) that the agreement to arbitrate encompasses the dispute at issue."

12  Langston v. 20/20 Cos., 2014 WL 5335734, at *3 (C.D. Cal. 2014); see also

13  Lamkin v. Morinda Properties, 2012 WL 2913257, at *9 (D. Utah 2012)

14  (acknowledging substantially the same standard).  In addressing a motion to

15  compel arbitration, however, there is a presumption of arbitrability:

16      [T]here is a presumption in favor of arbitrability; that is, an order
       to arbitrate the particular grievance should not be denied unless it
17      may be said with positive assurance that the arbitration clause is
       not susceptible of an interpretation that covers the asserted dispute.
18      Doubts should be resolved in favor of coverage.

19  Sanchez v. Nitro-Lift, 762 F.3d 1139, 1147-48 (10th Cir. 2014) (quoting Local 5-

20  857 Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Conoco Inc.,

21  320 F.3d 1123, 1126 (10th Cir. 2003)); see also Mitsubishi v. Soler Chrysler-

22  Plymouth, 473 U.S. 614, 626 (1985); Marubeni, 592 Fed. Appx. at 643 (courts

23  must give "due regard to the federal policy in favor of arbitration by resolving

24  ambiguities as to the scope of arbitration in favor of arbitration.").

25

26

27  (...continued)
   demand class arbitration even if not permitted by contract, was inconsistent with
28  and preempted by the FAA).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

6

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

### A.    Plaintiff And Lexington Entered Into A Valid Arbitration Agreement

As the party seeking to compel arbitration, Lexington "has the burden of demonstrating the existence of an enforceable agreement to arbitrate." Island Peak Ranch v. FIIK Inv., 2008 WL 2673925, at *9 (D. Utah 2008); see also Langston, 2014 WL 5335734, at *3.  Lexington easily satisfies this requirement:  the Terms of Use contain a clear and unambiguous agreement to arbitrate all claims between Plaintiff and Lexington.  See Heath Decl., Ex. 1, at Ex. D (Terms of Use); disc. infra at 9-11.  This arbitration agreement is clearly marked in capitalized and bolded letters that begin on the first page of the Terms of Use.  See Heath Decl., Ex. 1, at Ex. D (Terms of Use); see also Kilgore v. KeyBank, 718 F.3d 1052, 1059 (9th Cir. 2013) (holding that an arbitration clause that was in its own section and bold faced was valid and enforceable); Morales v. Cont'l Fin., 2009 WL 2579093, at *2-3 (D. Utah 2009) (compelling arbitration and noting that the agreement in bold letters and conspicuously marked was validly formed).  Plaintiff affirmatively agreed to the Terms of Use -- including the arbitration agreement -- when he registered to receive a free consultation from Lexington on its website.  See Heath Decl., Ex. 1, at Ex. B (Registration Page) & Ex. D (Terms of Use).

Notably, courts repeatedly hold that similar "clickwrap" or "click-through" arbitration agreements are valid and have routinely compelled arbitration based upon those agreements.[5]  See, e.g., Hancock, 701 F.3d at 1256-58 (affirming the district court's dismissal based upon an arbitration clause in a clickwrap agreement and noting that "[c]lickwrap agreements are increasingly common and 'have routinely been upheld'"); Swift, 805 F. Supp. 2d at 910-12 (enforcing an arbitration agreement contained in a clickwrap agreement when the plaintiff "was

---

[5]    "Clickwrap is a commonly used term for agreements requiring a computer user to consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction."  Hancock, 701 F.3d at 1255.

1   provided with an opportunity to review the terms of service in the form of a

2   hyperlink immediately under the 'I accept' button" that plaintiff clicked);

3   Crawford v. Beachbody, 2014 U.S. Dist. LEXIS 156658, at *8-9 (S.D. Cal. 2014)

4   (enforcing a choice of law clause in a modified clickwrap agreement where the

5   hyperlinked terms and conditions appeared above the "Purchase" button); see also,

6   e.g., Day v. Microsoft, 2014 WL 243159, at *2-3 (W.D. Wash. 2014) (clickwrap

7   agreement was enforceable when "Plaintiff had to accept the terms of the Windows

8   8 Pro agreement by checking an 'I accept the license terms' box and then by

9   clicking on an 'Accept' button before accessing the product"); Sherman v. AT&T,

10   2012 WL 1021823, at *3 (N.D. Ill. 2012) (compelling arbitration of a clickwrap

11   agreement, noting that the plaintiff had reasonable notice of the terms when he had

12   to click that he agreed to them prior to the transaction).

13       As Judge Jackson of the District of Colorado aptly observed, arbitration

14   agreements that are entered into electronically have become the norm and are fully

15   enforceable:

16   > We live in an electronic age.  It is commonplace these days to enter
17   > into agreements electronically . . . plaintiffs had a reasonable
     > opportunity to access the Subscriber Agreement had they wished to
18   > do so.  They received repeated instructions to do so as well as
     > warnings that by enrolling in the Program they were agreeing to be
19   > bound by the terms and conditions of the program. They accepted
     > the benefits of the Price for Life Program, and I conclude that they
20   > are bound by the arbitration and class action waiver terms.

21   Vernon v. Qwest, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013).  This logic applies

22   with equal force to this case:  Plaintiff was made aware that his registration with

23   Lexington was governed by the Terms of Use.  See Heath Decl., Ex. 1, at Ex. B

24   (Registration Page) & Ex. D (Terms of Use).  Plaintiff affirmatively accepted those

25   Terms of Use, and therefore, Plaintiff is bound by them.  See, e.g., Hancock, 701

26   F.3d at 1256-58; Swift, 805 F. Supp. 2d at 910-12.[6]

27   _____
28   [6]    Courts also routinely grant motions to compel arbitration of cases asserting
     claims for alleged violations of the TCPA.  See, e.g., Fischer v. Rent-A-Center,
     (continued...)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

8

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

**B.    This Dispute Plainly Falls Within The Scope Of The Arbitration Agreement And In Any Event, Any Disputes Regarding The Scope Of Arbitration Are Delegated To The Arbitrator**

Both federal law and Utah law strongly favor arbitration and manifest these policies by resolving all disputes regarding the scope of an arbitration agreement in favor of arbitration.  See, e.g., Sanchez, 762 F.3d at 1147-48; Mariposa v. United Shipping Solutions, 295 P.3d 1173, 1177 (Utah App. Ct. 2013) ("[I]f there is any question as to whether the parties agreed to resolve their disputes through arbitration or litigation . . . we interpret the agreement keeping in mind our policy of encouraging arbitration. It is the policy of the law in Utah to interpret contracts in favor of arbitration[.]") (quoting Central Florida Invs., Inc. v. Parkwest Assocs., 2002 UT 3, ¶ 16 (Utah 2002)); disc. supra at 5-6.  The arbitration agreement in this case is broad and encompasses "all claims between [Plaintiff] and Lexington," including any claims that "allege[] state or federal statutory violation."  See Heath Decl., Ex. 1, at Ex. D (Terms of Use); see also, e.g., Steigerwalt v. Terminix, 246 F. Appx. 798, 801 (3d Cir. 2007) (holding that an arbitration agreement requiring arbitration of "all claims" was broad).

The claims made by Plaintiff in the Complaint undoubtedly fall within the scope of this agreement.  See Compl. (Dkt. #1) at ¶¶ 11-19, 32-39; Heath Decl., Ex. 1, at Ex. D (Terms of Use).  Plaintiff alleges that he and members of a proposed class received unsolicited calls and/or text messages to their cellular telephones from Lexington and that these messages violated the TCPA, notwithstanding the fact that Plaintiff had consented to receiving calls and text messages from Lexington.  See Compl. (Dkt. #1) at ¶¶ 11-19, 21, 32-39.  These

(...continued)
2014 WL 3729553, at *1, 6 (E.D. Cal. 2014) (granting motion to compel arbitration in case involving the TCPA); Koyoc v. Progress Fin., 2014 WL 1878903, at *4-7 (C.D. Cal. 2014) (same); Moore v. T-Mobile, 2013 WL 6645011, at *1 (2d Cir. 2013) (affirming grant of motion to compel arbitration in a TCPA case).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

9

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1    allegations are plainly a "claim" alleging a violation of federal law -- namely, the

2    TCPA -- between Plaintiff and Lexington.  See id.; Heath Decl., Ex. 1, at Ex. D

3    (Terms of Use).  Moreover, the allegedly unsolicited call was also plainly related

4    to Plaintiff having registered with Lexington for a free consultation regarding

5    credit repair, as the call makes clear that Lexington was specifically calling with

6    respect to Plaintiff's request for credit repair services.  See Heath Decl., Ex. 1, at

7    ¶ 13 & Ex. E (Call Transcript).

8         Accordingly, Plaintiff's allegation that he received an "unsolicited" call to

9    which he did not consent is inextricably linked to his registration for free credit

10   repair consultation with Lexington and his providing his cellular telephone number

11   through that process.  Compare Compl. (Dkt. #1) at ¶¶ 11-19 (alleging that

12   Plaintiff received an unsolicited call for which he did not provide consent), with

13   Heath Decl., Ex. 1, at Ex. D (Terms of Use) (agreeing to arbitrate "all claims"

14   between Plaintiff and Lexington), and id. at Ex. B (Registration Page) (providing

15   Plaintiff's telephone number and consent to receive phone calls).  Given the

16   breadth of the arbitration agreement, however, it certainly cannot be said with

17   "positive assurance" that there is no interpretation of the agreement that would

18   encompass this dispute.  See Sanchez, 762 F.3d at 1147-48; Sherman v. RMH,

19   2014 WL 30318, at *8-9 (S.D. Cal. 2014).  Quite to the contrary, Plaintiff quite

20   clearly agreed to arbitrate disputes such as this.  See Heath Decl., Ex. 1, at Ex. D

21   (Terms of Use); disc. supra at 9-10.

22        In any event, any disputes regarding the scope of the arbitration agreement

23   would themselves be subject to arbitration:

24        The arbitrator shall have the authority to interpret the [Terms of
          Use], including but not limited to the authority to decide whether
25        any claim is arbitrable under the [Terms of Use] and to decide issues
          related to the scope of arbitration, the rules of arbitration, the
26        arbitrator's jurisdiction, and the enforceability of the [Terms of Use].

27   Heath Decl., Ex. A, at Ex. D (Terms of Use).  Thus, even if there were some

28   question regarding whether this dispute falls within the scope of the arbitration

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

10

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1   agreement (and Lexington respectfully submits that there is not), that question

2   should be resolved by the arbitrator.  See, e.g., Rent-A-Center v. Jackson, 561 U.S.

3   63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate

4   'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

5   arbitrate or whether their agreement covers a particular controversy."); Oracle v.

6   Myriad, 724 F.3d 1069, 1072 (9th Cir. 2013) (arbitrability may be decided by the

7   arbitrator if there is clear evidence of the parties' agreement to allow him or her to

8   do so); Moss v. McLucas, 2013 WL 1680483, at *3, 6 (S.D. Cal. 2013)

9   (compelling arbitration and holding that the arbitration agreement required

10   questions of arbitrability to be determined by the arbitrator).

11       Because Lexington has shown the existence of a valid arbitration agreement

12   and that this matter falls within the scope of that agreement, its motion to compel

13   arbitration should be granted, and this matter should be dismissed or stayed.  See

14   disc. supra at 5-11.

15                              **IV.    CONCLUSION**

16       For the reasons set forth above, Lexington respectfully requests that this

17   Court enforce the arbitration agreement in its agreement with Plaintiff and grant its

18   motion to compel arbitration.  Lexington further requests that the Court dismiss or

19   stay these proceedings and grant any other relief the Court deems appropriate.

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

11

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

1   Dated:  September 30, 2015          Respectfully submitted,

2

3                                       LATHAM & WATKINS LLP

4                                       By: _/s/ David F. Kowalski_____
                                            david.kowalsk@lw.com
5

6                                       LATHAM & WATKINS LLP
                                        Mark S. Mester (*Pro Hac Vice pending*)
7                                           mark.mester@lw.com
                                        Kathleen P. Lally (*Pro Hac Vice pending*)
8                                           kathleen.laly@lw.com
                                        330 North Wabash Avenue, Suite 2800
9                                       Chicago, Illinois  60611
                                        Telephone:  (312) 876-7700
10                                      Facsimile:  (312) 993-9767

11                                      LATHAM & WATKINS LLP
                                        David F. Kowalski (CA Bar No. 265527)
12                                          david.kowalski@lw.com
                                        12670 High Bluff Drive
13                                      San Diego, California 92130
                                        Telephone: (858) 523-5400
14                                      Facsimile:  (858) 523-5450

15                                      Attorneys for Defendant
                                        John C. Heath, Attorney at Law, d/b/a
16                                      Lexington Law Firm

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

12

CASE NO. 3:15-cv-01676-LAB-JMA
DEF.'S MEM. IN SUPP. OF MOT. TO
COMPEL ARBITRATION

# EXHIBIT 1

Exhibit 1
1

1  LATHAM & WATKINS LLP
Mark S. Mester (*Pro Hac Vice pending*)
2     mark.mester@lw.com
Kathleen P. Lally (*Pro Hac Vice pending*)
3     kathleen.laly@lw.com
330 North Wabash Avenue, Suite 2800
4  Chicago, Illinois  60611
Telephone:  (312) 876-7700
5  Facsimile:  (312) 993-9767

6  LATHAM & WATKINS LLP
David F. Kowalski (Ca. Bar No. 265527)
7     david.kowalski@lw.com
12670 High Bluff Drive
8  San Diego, California 92130
Telephone: (858) 523-5400
9  Facsimile:  (858) 523-5450

10  Attorneys for Defendant
LEXINGTON LAW FIRM

11

12                **UNITED STATES DISTRICT COURT**
                 **SOUTHERN DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| 14  NATHAN HALE, Individually and on Behalf of Themselves and All Others Similarly Situated, | CASE NO. 3:15-CV-01676-LAB-JMA |
| 15 | CLASS ACTION |
|          Plaintiff, | |
| 16     v. | DECLARATION OF JOHN C. HEATH |
| 17  JOHN C. HEATH, Attorney at Law PLLC, d/b/a LEXINGTON LAW FIRM, | |
| 18          Defendant. | |

19

20     I, John C. Heath, hereby declare and state as follows:

21     1.     I am over the age of 18 and competent to be a witness herein.  All

22  statements in this Declaration are true and correct to the best of my knowledge and

23  belief and, unless state otherwise herein, are based upon my personal knowledge,

24  review of relevant and available documents and discussions with other relevant

25  individuals.

26     2.     During the time period relevant to this case, I was Directing Attorney

27  and responsible for the management of Lexington Law Firm ("Lexington").

28     3.     Lexington performs consumer advocacy services to correct errors

**Exhibit 1**
**2**

1   listed on consumers' credit reports.  Clients find Lexington in a variety of different

2   ways, one of which is by completing a web registration form that may be accessed

3   through the websites of internet advertisers.

4          4.      On or about March 11, 2015, Plaintiff Nathan Hale ("Plaintiff")

5   visited the website web2carz.com, ostensibly seeking information about a car loan.

6          5.      Attached hereto as Exhibit A is a true and correct copy of the screen

7   shots from web2carz.com, which are identical in all material respects to the

8   web2carz.com website at the time that Plaintiff visited it.

9          6.      Upon submitting his loan request to web2carz.com, Plaintiff was

10  directed to a website acknowledging that request and further asking if he would

11  like to contact or be contacted by a representative from Lexington regarding

12  information about credit repair.

13         7.      Plaintiff completed the registration form with Lexington, providing

14  his name, email address, mailing address and personal and work phone numbers

15  and clicked "Get Your Free Consultation."

16         8.      Attached hereto as Exhibit B is a true and correct copy of the

17  registration page for Lexington found on web2carz.com, which is identical in all

18  material respects to the registration page on web2carz.com at the time that Plaintiff

19  registered with Lexington and requested a free consultation.

20         9.      Attached hereto as Exhibit C is a true and correct copy of documents

21  reflecting all interactions between Plaintiff and Lexington.

22         10.     By seeking his free consultation, Plaintiff expressly acknowledged

23  that he "agree[d] by electronic signature to . . . the Privacy Policy and Terms of

24  Use."  The clause advising Plaintiff that he was agreeing to the Terms of Use

25  appeared directly above the link Plaintiff was required to click, was in the same

26  font color and size as the rest of the text on the registration page and included a

27  highlighted hyperlink to each of the referenced documents, including the Terms of

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CHICAGO

2

CASE NO. 3:15-cv-01676-LAB-JMA
DECLARATION OF JOHN C. HEATH

Exhibit 1
3

Use.

11.     Plaintiff would not have been able to register with Lexington over the website and receive a free credit consultation without first agreeing to the Privacy Policy and Terms of Use.

12.     Attached hereto as Exhibit D is a true and correct copy of the Terms of Use, which are identical in all material respects to the Terms of Use at the time Plaintiff registered with Lexington and requested a free consultation.

13.     Attached hereto as Exhibit E is a true and correct transcript of the call placed by Lexington to Plaintiff.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 29, 2015 in _North Salt Lake City, Utah_.

John C. Heath

**Exhibit 1**

**4**

# EXHIBIT A

Exhibit 1-A

5



Exhibit 1-A

6



Exhibit 1-A

7



Exhibit 1-A

8



Exhibit 1-A

9

# EXHIBIT B

Exhibit 1-B
10



Exhibit 1-B

11

# EXHIBIT C

Exhibit 1-C
12

Nathan Hale - Confidential

CONTACT LOG:

| Date | Type | Inbound/Outbound | Lead Info | Permissions | Result | Recording Summary /TEXT Message or EMAIL Message | Asks for DNC | Form | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/11/2015  12 30 19 | Lead Submittal | Inbound | Form 5144<br>Remote IP address: 68.8.60.118<br>Lead ID: 34104169<br>Date Time: 3/11/2015  12:30:19<br>Name: Nathan Hale<br>Address:      REDACTED<br>Email Address  REDACTED  @gmail.com<br>Phone Number REDACTED 2783<br>Lead Source: Web2carz.com | See Form | | | | 5144 | | | | | | | |
| 3/11/2015 9 06 | Phone call to REDACTED | Outbound | | | Virtual Message to Autovoice | | | | | | | | | | |
| 3/11/2015 14 56 | Phone call to REDACTED | Outbound | | | Virtual Message to Autovoice | | | | | | | | | | |
| 3/12/2015 9 48 | Phone call to REDACTED | Outbound | | | | Recording Summary   Call from LEX regarding Nathan's request for credit repair.  He stops her and says he didn't request services, he just filed bankruptcy and it was discharged, then the call is disconnected in mid-sentence. | No | | | | | | | | |
| 6/19/2015 17 47 15 | SMS Text to REDACTED | Outbound | | | | SMS Text   Nathan, it's Beth with Lexington Law. Give me a call to see if your credit report has changed since we first spoke, 855-381-5469. Txt STOP to end texts | | | | | | | | | |
| 6/19/2015 17 59 46 | SMS Text from  REDACTED | Inbound | | | | SMS Text  Stop | Yes | | | | | | | | |
| 6/19/2015 17 59 46 | SMS Text to REDACTED | Outbound | | | | SMS Text  You will no longer receive SMS messages from Lexington Law. To be removed from calls please call 800-422-4895. Allow 24 hours to process. | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

# EXHIBIT D

Exhibit 1-D

14

Sign Up

## Terms of Use

### © Lexington Law Firm

This Website Terms of Use Agreement ("Website Terms") is between you and Lexington Law Firm, its past, present, or future parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective agents, employees, directors, officers, partners, and members (whether acting in their corporate or individual capacity) ("Lexington," "we" or "us"), with a principal place of business at 360 North Cutler Drive, North Salt Lake, Utah 84054. Notwithstanding any language in the Website Terms to the contrary, the Website Terms have the same effect as an agreement in writing and govern your use of this site and its content (the "Website"), your engagement of Lexington's legal services, your request that Lexington contact you about its credit repair services, and/or your participation in Lexington's Text Message Program. Lexington's "Text Message Program" includes sending text message(s) to Lexington and/or receiving text message(s) from Lexington.

BY USING THE WEBSITE, ENGAGING LEXINGTON'S LEGAL SERVICES, REQUESTING THAT LEXINGTON CONTACT YOU ABOUT ITS CREDIT REPAIR SERVICES, AND/OR PARTICIPATING IN LEXINGTON'S TEXT MESSAGE PROGRAM, YOU SIGNIFY YOUR AGREEMENT TO THE WEBSITE TERMS.

Lexington's Privacy Policy applies to your use of Lexington's website, all services provided by us, your request that Lexington contact you about its credit repair services, and/or your participation in Lexington's Text Message Program, and its terms are made a part of the Website Terms. To view Lexington's Privacy Policy, click **here**. By using Lexington's website, engaging our services, requesting that Lexington contact you about its credit repair services, and/or participating in Lexington's Text Message Program, you acknowledge you have reviewed Lexington's privacy policy and agree to its terms.

BY USING LEXINGTON'S WEBSITE, ENGAGING LEXINGTON'S LEGAL SERVICES, REQUESTING THAT LEXINGTON CONTACT YOU ABOUT ITS CREDIT REPAIR SERVICES,

**Exhibit 1-D**
**15**

AND/OR PARTICIPATING IN LEXINGTON'S TEXT MESSAGE PROGRAM, **YOU AGREE TO ARBITRATE ALL CLAIMS BETWEEN YOU AND LEXINGTON ON AN INDIVIDUAL BASIS ONLY AND NOT AS A PART OF ANY CLASS. A "CLAIM" IS ANY CASE, CONTROVERSY, DISPUTE, TORT, DISAGREEMENT, LAWSUIT, LEGAL ACTION, OR CLAIM NOW OR HEREAFTER PENDING BETWEEN YOU AND LEXINGTON, INCLUDING BUT NOT LIMITED TO ANY ALLEGED STATE OF FEDERAL STATUTORY VIOLATION, OR ANY DISPUTE OVER THE INTERPRETATION OF THE WEBSITE TERMS OR THE ARBITRABILITY OF ANY CLAIM PURSUANT TO THE WEBSITE TERMS. THIS AGREEMENT TO ARBITRATE GOVERNS ALL PAST, CURRENT AND PROSPECTIVE INTERACTIONS WITH LEXINGTON. YOU AGREE THAT YOU ARE WAIVING ALL RIGHTS TO: (A) A TRIAL BY JURY; (B) PARTICIPATE IN A CLASS ACTION LAW SUIT OR CLASS ACTION ARBITRATION; AND (C) BRING AN ACTION AGAINST LEXINGTON IN A COURT OF LAW. YOU MAY INDIVIDUALLY ARBITRATE ANY CLAIM AGAINST LEXINGTON IN ANY JURISDICTION IN THE UNITED STATES. LEXINGTON WILL REIMBURSE YOU UP TO $300 OF YOUR ARBITRATION FILING FEE. THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION THEN IN FORCE SHALL GOVERN THE ARBITRATION (provided, however, that the terms of the Website Terms shall control over any inconsistency between the Rules of the American Arbitration Association and the Website Terms). The arbitrator shall have authority to interpret the Website Terms, including but not limited to the authority to decide whether any claim is arbitrable under the Website Terms and to decide issues related to the scope of arbitration, the rules of arbitration, the arbitrator's jurisdiction, and the enforceability of the Website Terms. You agree that the Website Terms involves commerce under 9 U.S.C. §§ 1 et seq. and that this Arbitration Clause is governed by federal law, including the Federal Arbitration Act. The remainder of the Website**

**Exhibit 1-D**

**16**

**Terms is governed by the laws of the state of Utah, as provided in Section 17 below.**

## 1. About The Website Terms

The Website is a service made available by Lexington. If you do not agree to the Website Terms, you may not use the Website. We may modify the Website Terms at any time. If you do not agree to the changes, you must discontinue using the Website, discontinue using Lexington's services, rescind your request that Lexington contact you about its credit repair services, and/or discontinue your participation in Lexington's Text Message Program before the changes take effect. Your continued use of the Website, use of Lexington's services, request that Lexington contact you about its credit repair services, and/or participation in Lexington's Text Message Program after any such changes take effect constitutes your acceptance to such changes. Each time you visit or log in to the Website, continue using Lexington's services, continue your request that Lexington contact you about its credit repair services, and/or participate in Lexington's Text Message Program, you reaffirm your acceptance of the Website Terms. You are responsible for regularly reviewing the Website Terms, by clicking on the "Terms of Use" link at www.lexingtonlaw.com. The Website Terms may be supplemented by additional terms and conditions applicable to privacy, specific areas of this Website, or to where particular content or transactions are posted in particular areas of the Website and, together with the Website Terms, govern your use of those areas, content, or transactions.

## 2. About the Website

The Website gives users information about Lexington's credit repair services, general educational and informational resources about credit, and the ability to sign up for and engage Lexington's services.

## 3. Engagement of Lexington's Services

You are not required to engage Lexington's services in order to visit and read material on the Website; however, you will need to engage Lexington's services if you want it to assist you in your efforts to improve your credit reports and rating. If you engage Lexington, you agree to provide accurate and complete information. You must be legally capable to enter into contracts. It is your responsibility to make any updates to that information. Each engagement is

**Exhibit 1-D**
**17**

for a single person only. We do not permit any other person to engage Lexington's services on behalf of another unless you have an appropriate Power of Attorney. You are responsible for preventing such unauthorized use. If you believe there has been unauthorized use, you should notify Lexington immediately by emailing **quickanswers@lexingtonlaw.com**.

## 4. Ownership

The Website contains information, content or advertisements text, photographs, designs, graphics, images, sound and video recordings, animation and other materials and effects (collectively, the "Content") that are protected by copyrights, trademarks, service marks, trade dress, patents or other intellectual or proprietary rights owned by Lexington or other third parties. All trademarks and copyrighted information contained on the Website are the property of their respective owners. Further, Lexington retains all rights (including intellectual property rights), title and interest in the Website, technology, and all underlying technology and data including any enhancements, software, applications and improvements related to the Website (the "Technology")(the terms Content and Technology collectively will be referred to as the "Materials"). You may not remove from any electronic or printed copy any copyright, trademark, or other proprietary notice.

## 5. Use of Website and Materials

Lexington provides the Website and the Materials for your individual, non-commercial use and solely for the purpose of carrying out individual transactions with the Website. Any other use of the Website or the Materials is strictly prohibited. You may not, either directly or indirectly:

- Modify, republish, redistribute, delete, resell, sublicense, publicly perform, cache by proxy the Website or Materials without the express written permission of Lexington or the applicable rights holder;
- Use the Materials for telemarketing, direct marketing, and commercial mass e-mail or by agents or representatives or e-mail spammers;
- Reverse engineer, decompile, disassemble, merge, copy, use, disclose, rent, lease, loan, sell, sublicense or transfer the underlying source code or structure or sequence of the Technology or delete or alter author attributes or copyright notices;
- Use any network monitoring or discovery software to determine Website architecture, or

**Exhibit 1-D**
**18**

extract information about usage or users;

- Reformat or frame any portion of the Website or Materials;
- Use any device, software or routine that interferes with the proper working of the Website, or otherwise attempt to interfere with the proper working of the Website;
- Take any action that imposes, or may impose in our sole discretion an unreasonable or disproportionately large load on our infrastructure;
- Violate the Website Terms, applicable law or the rights of others; or Disrupt or interfere with the security of, or otherwise cause harm to, the Website.

Any permitted use of the Website does not extend to using the Website or Materials for any illegal purpose, or to transmit to or through the Website or to or through any service any illegal, harmful, threatening, defamatory, obscene, hateful, pornographic or other objectionable material of any kind, or to interfere with, abuse or otherwise violate the legal rights of any third party using the Website or Materials.

Without limiting other remedies, we may limit, suspend, or terminate our service and user accounts, prohibit access to our website, remove hosted content, and take technical and legal steps to keep users off the Website if we think that they are creating problems, possible legal liabilities, or acting inconsistently with the letter or spirit of our policies. We also reserve the right to cancel unconfirmed accounts.

## 6. License

By using the Website, uploading content to or submitting any materials for use on the Website, you grant (or warrant that the owner of such rights has expressly granted) Lexington a perpetual, royalty-free, irrevocable, non-exclusive right and license to use, reproduce, modify, adapt, publish, translate, create derivative works from and distribute such materials and/or information generated through use of the Website or incorporate such materials and/or information generated through use of the Website into any form, medium, or technology now known or later developed throughout the universe. We need these rights to host and display your content.

## 7. Automated Activity

The Website may use robot exclusion methods, which include robots.txt files and HTML meta

**Exhibit 1-D**
**19**

tags, which expressly allow and/or exclude specified automated programs from accessing certain portions of the Website. Much of the information on the Website is updated on a real time basis and is proprietary or is licensed to Lexington by our users or third parties. You agree that you will not use any robot, spider, scraper or other automated means to access the Website for any purpose, including but not limited to performing "offline" searches and mirroring, without our express written permission as indicated in the then current robots.txt file or HTML meta tags on the Website. Additionally, you agree that you will not bypass our robot exclusion methods or other measures we may use to prevent or restrict access to the Website.

## 8. Linking

You may provide links only to the homepage of this Website, provided (a) you do not remove or obscure, by framing or otherwise, any portion of the homepage, (b) you give Lexington notice of such link by sending an e-mail to **quickanswers@lexingtonlaw.com** and (c) you discontinue providing links to this Website if requested by Lexington. If you wish to provide links to a section within the Website, you should forward your request to Lexington at **quickanswers@lexingtonlaw.com** and Lexington will notify you if, within its sole and unfettered discretion, permission is granted, and, if so, the terms and conditions of the permission.

## 9. Representations

You represent and warrant to us that (a) you are legally capable to enter into contracts, (b) you are providing us at all times true, accurate and up to date information about yourself, (c) you will comply at all times with the Website Terms and applicable law and (d) your use of the Website and any transactions that you make with us will not violate the rights of any third party.

## 10. Disclaimer

Lexington makes every effort to ensure the information presented in, on or through its Website is accurate; however, Lexington makes no guarantee as to such information, and is not responsible for any resulting loss or damage.

## 11. Warranty, Liability, Indemnification

**Exhibit 1-D**
**20**

Lexington makes no representations regarding the availability and performance of its Website. You hereby acknowledge that any use of the Website and reliance upon any Materials shall be at your sole risk and that Lexington shall not be liable for any loss of data, lost profits or any other damages or losses resulting from such use.

THE WEBSITE AND MATERIALS ARE PROVIDED BY LEXINGTON ON AN "AS IS" BASIS AND AS AVAILABLE, WITHOUT ANY WARRANTY OR REPRESENTATION OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE. LEXINGTON EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, ACCURACY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND THE IMPLIED CONDITIONS OF SATISFACTORY QUALITY AND ACCEPTANCE AS WELL AS ANY LOCAL JURISDICTIONAL ANALOGUES TO THE ABOVE AND OTHER IMPLIED OR STATUTORY WARRANTIES. WE MAKE NO REPRESENTATIONS THAT THE WEBSITE OR MATERIALS WILL MEET YOUR REQUIREMENTS, OR THE RESULTS THAT YOU MAY GAIN FROM YOUR USE OF THE WEBSITE.

IN NO EVENT SHALL LEXINGTON, ITS DIRECTORS, OFFICERS, EMPLOYEES, AFFILIATES, AGENTS OR CONTRACTORS BE LIABLE FOR ANY COMPENSATORY, DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, LOSS OF DATA, INCOME OR PROFIT, LOSS OF OR DAMAGE TO PROPERTY, OR ANY CLAIMS OF YOU OR OTHER THIRD PARTIES WHATSOEVER WITH RESPECT TO THE WEBSITE OR THE MATERIALS REGARDLESS OF THE LEGAL THEORY ON WHICH THE CLAIM IS BASED, INCLUDING, WITHOUT LIMITATION, ANY DAMAGES THAT RESULT FROM ANY MISTAKE, OMISSION, VIRUS, DELAY OR INTERRUPTION IN OPERATION OR SERVICE OR FAILURE OF PERFORMANCE, WHETHER OR NOT RESULTING FROM AN ACT OF GOD, COMMUNICATIONS FAILURE, THEFT OR OTHERWISE. LEXINGTON SHALL NOT BE LIABLE FOR ANY LOSSES OR DAMAGES WHATSOEVER RESULTING FROM ANY FAILURE OF THE INTERNET. Some states do not allow the exclusion or limitation of liability of consequential or incidental damages, so the above exclusions may not apply to all users; in such states liability is limited to the fullest extent permitted by law.

LEXINGTON DOES NOT GUARANTEE THAT ANY CONTENT, INFORMATION, SOFTWARE OR OTHER MATERIAL ACCESSIBLE THROUGH THE WEBSITE WILL BE FREE OF VIRUSES, "WORMS", "TROJAN HORSES", OR THEIR HARMFUL COMPONENTS. LEXINGTON'S ENTIRE

Exhibit 1-D
21

LIABILITY AND YOUR SOLE AND EXCLUSIVE REMEDY WITH RESPECT TO THE USE OF ANY
SERVICES PROVIDED BY LEXINGTON SHALL BE CANCELLATION OF YOUR ACCOUNT.

## 12. Indemnity

You agree to indemnify, defend, and hold harmless Lexington, its officers, directors,
employees, agents, representatives, vendors and distributors from and against any and all
claims, liabilities, damages, losses, costs, expenses, or fees (including reasonable attorneys'
fees) that such parties may incur as a result of or arising from your (or anyone using your
account's) violation or breach of any representation or obligation under the Website Terms. We
reserve the right to assume the exclusive defense and control of any matter otherwise subject to
indemnification by you and, in such case, you agree to cooperate with our defense of such
claim.

## 13. Privacy

We may, subject to and in accordance with our Privacy Policy for marketing and other
purposes, collect, process and transmit certain data obtained from and about you in the course
of your accessing the Website or during a phone consultation, including information collected
in the course of an abandoned transaction. By agreeing to the Website Terms you agree to such
data being so used and further agree that it may be transmitted to others whether or not within
the United States in accordance with our Privacy Policy and under applicable privacy and data
protection legislation. Information on how and what type of data (if any) is held about you can
be obtained by clicking **here** to review our Privacy Policy or by **contacting us**.

## 14. Electronic Notices and Transactions

You agree to transact with us electronically. This means you agree to accept any terms and
conditions and to transact any business with us by electronic means, which includes receiving
all documents in HTML or PDF format and communicating over the Internet. You also certify
that you are at least 18 years of age and have access to the Internet to receive Lexington's
services, to request that Lexington contact you about its credit repair services, to participate in
Lexington's Text Message Program, and to view, print and retain all documentation. You
authorize us to send you important notices about the Website and any pending transactions to
an email address you provide to us, if you are a client of Lexington or have requested that we

**Exhibit 1-D**
**22**

contact you about our credit repair services. It is your duty to keep your email address up to date and to maintain a valid email address and to ensure that emails we send you are not filtered or stopped by spam filters or other types of email blocking functionalities. If you no longer desire to transact electronically with us, you may no longer use the Website or Lexington's services. You can retrieve and review the Website Terms at any time by visiting **https://www.lexingtonlaw.com**, and may receive paper copies by calling Lexington at **1-800-341-8441**.

## 15. Access

You are responsible for obtaining at your own expense all equipment and services needed to access and use the Website, including all devices, Internet browsers and Internet access. If you access the Website or a Website application through a mobile or wireless device, you are responsible for all fees that your carrier may charge you for data, text messaging and other wireless access or communications services.

## 16. Notice Regarding Technology

Your use of the Website must comply with all applicable laws in the territory in which you access and use the Website.

## 17. Miscellaneous

Lexington reserves the right to investigate complaints or reported violations of the Website Terms and to take any action Lexington deems appropriate including but not limited to reporting any suspected unlawful activity to law enforcement officials, regulators, or other third parties and disclosing any information necessary or appropriate to such persons or entities relating to user profiles, e- mail addresses, usage history, posted materials, IP addresses and traffic information. Lexington reserves the right to seek all remedies available at law and in equity for violations of the Website Terms, including but not limited to the right to block access from a particular Internet address to any Lexington website. These incorporate by reference any notices contained on the Website and constitutes the entire agreement with respect to access to and use of the Website, your request that Lexington contact you about its credit repair services, and/or your participation in Lexington's Text Message Program. You agree that the provisions and covenants set forth herein are reasonable. In the event that any provision or

**Exhibit 1-D**
**23**

covenant of the Website Terms shall be held invalid, illegal or unenforceable by a court or arbitrator of competent jurisdiction for any reason, including but not limited to the scope thereof, then such provision will be severed and replaced with a new provision that most closely reflects the original intention thereof, and the remaining provisions of the Website Terms will remain in full force and effect for the greatest time period and for the broadest scope permitted by applicable law. Without limiting the foregoing, you agree and request that if any court or arbitrator of competent jurisdiction considers any provision or covenant of the Website Terms to be overly broad based on the circumstances at the time enforcement is requested, that such court or arbitrator construe and enforce the provision or covenant to the fullest extent that such court or arbitrator deems reasonable.

THE WEBSITE TERMS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF UTAH, USA, AS THEY APPLY TO AGREEMENTS MADE SOLELY THEREIN, PROVIDED, HOWEVER, THAT THE ARBITRATION CLAUSE IS GOVERNED BY FEDERAL LAW. The Arbitration Clause, the obligations in the first four paragraphs of the Website Terms, and Sections 5 through 8, 10 through 15, 17 and 18, shall survive termination of the Website Terms.

The Website Terms constitutes the entire agreement and understanding between you and Lexington, except as you and Lexington may later agree in writing to modify the Website Terms. The Website Terms supersedes any and all prior agreements and understandings, oral or written, relating to the subject matter hereof.

## 18. Confidentiality of Information / Creation of Attorney-Client Relationship

The information presented on the Website does not create an attorney-client relationship. ALL ARTICLES AND MATERIAL DISPLAYED BY US ON THE WEBSITE ARE FOR INFORMATION ONLY (EXCEPTING LEXINGTON'S PRIVACY POLICY AND THE WEBSITE TERMS, WHICH ARE BINDING CONTRACTS), ARE NO SUBSTITUTE FOR SPECIFIC ADVICE, AND ARE IN NO MANNER TO BE CONSIDERED LEGAL ADVICE OR OTHER LICENSED PROFESSIONAL ADVICE OR A SUBSTITUTE THEREFOR. FOR SPECIFIC LEGAL ADVICE REGARDING YOUR PARTICULAR CIRCUMSTANCES, YOU MUST RETAIN LEGAL COUNSEL. Lexington does not represent or guarantee the accuracy or reliability of any advice, opinion, statement, or other

Exhibit 1-D
24

information displayed or distributed through the Website. You acknowledge that any reliance upon any such materials, opinion, advice, statement, memorandum, or information shall be at your sole risk. Lexington reserves the right, in its sole discretion, to correct any errors or omissions in any portion of the Website.

Any information contained on the Website with respect to results obtained by Lexington is not meant to indicate that the same or similar results can or will be obtained in other cases or situations. Results will vary depending on the facts and circumstances of each individual matter. Prior results do not predict, warrant or guarantee a similar outcome. References to past or present clients or the circumstances of their specific matters do not constitute testimonials or endorsements by such clients, nor are they a guarantee, warranty or prediction of the outcome of your legal matter.

Electronic mail or other communications through this site to Lexington (or any of its lawyers, other employees, agents or representatives) are not secure and are not subject to the attorney-client privilege. Accordingly, Lexington does not guarantee the confidentiality of such communications. You acknowledge that transmissions to and from the Website are not confidential and your communications may be read or intercepted by others. Any unprotected e-mail communication over the Internet is subject to possible interception or loss, is not confidential and is also subject to possible alteration. We are not responsible for and will not be liable to you or any third party for damages in connection with an e-mail sent by you to us or an e-mail sent by us to you, or anyone you designate, at your request. Violators of this section who use our services for any illegal purpose including but not limited to repeated unwanted emails or "Spam," may be prosecuted to the full extent of the law. You acknowledge that by submitting communications to Lexington, no confidential, fiduciary, contractually implied or other relationship is created between you and Lexington other than pursuant to the Website Terms and any subsequent written agreement entered into with Lexington.

Please do not use the information on our Website to distribute unsolicited bulk e-mails, solicitations or inquiries. The foregoing acts will constitute a violation of the Website Terms.

To the extent the State Bar Rules in your jurisdiction require us to designate a single attorney responsible for the Website, Lexington designates John C. Heath, located at 360 North Cutler Drive, North Salt Lake, Utah 84054, as the attorney responsible for the Website. Lexington

**Exhibit 1-D**
**25**

attorneys are licensed to practice law only in the states indicated in their biography.

Home

Become a Client

Contact Us

Press Room

Affiliates

Careers

Site Map

Credit Repair Services

Our Firm

Credit Education

© 2015 Lexington Law®. All rights reserved. John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law, and of counsel attorneys. 360 N. Cutler Drive, North Salt Lake Utah, 84054

Terms of Use

Privacy Policy Email Preferences. Credit Access.

Attorney Advertising

(1030.0.5676_101)

Confirming Your Phone Order

Phone Confirm

Exhibit 1-D
26

# EXHIBIT E

Exhibit 1-E
27

Hale/Lexington Phone Call

Hale:   Hello.

Lexington:     Hi, this is Linda.  I'm a paralegal with the Lexington Law firm.  We were giving you a call because you recently requested some information on our firm's credit repair, wanted to call *to see if you had any questions*.

Hale:   I, I . . . hold on, stop, stop--I didn't request any -- [I just filed] bankruptcy.  I just discharged *[recording cuts off]*

CH\2144695.1

**Exhibit 1-E
28**