**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*
Nathan Hale

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN HALE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>JOHN C. HEATH, ATTORNEY AT LAW, PLLC, d.b.a. LEXINGTON LAW FIRM,<br><br>Defendant. | **Case No.:** 3:15-cv-01676-LAB-JMA<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: November 23, 2015<br>Time: 11:15 a.m.<br>Ctrm.: 9, 2nd Floor<br><br>[Assigned to the Hon. Larry Alan Burns] |

//

//

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. iii

**I.     INTRODUCTION** ..................................................................... 1

**II.    LEGAL STANDARD** ................................................................ 2

**III.   ARGUMENT** ........................................................................... 3

    **A.   ARBITRATION CANNOT BE COMPELLED UNDER THE FAA BECAUSE NO VALID OR ENFORCEABLE AGREEMENT EXISTED BETWEEN PLAINTIFF AND DEFENDANT** ............................................................. 3

        **1.   Basic Contract Law Principles Relating To Contract Formation Apply In Determining The Existence Of A Valid Agreement To Arbitrate A Claim** ............................. 3

        **2.   Plaintiff Cannot Be Bound By Defendant's Arbitration Provision Because There Was No Mutual Assent Between Plaintiff And Defendant When The Parties Purportedly Entered Into The Agreement To Arbitrate Plaintiff's Claims** ........................................................ 5

           *a) The Inconspicuous Nature Of The Arbitration Provision Precludes A Finding Of Mutual Assent* ............. 5

           *b) The Absence Of Plaintiff's Intent To Enter Into The Arbitration Clause Precludes A Finding Of Mutual Assent* ................................................................ 7

    **B.   THE ARBITRATION PROVISION IS UNENFORCEABLE BECAUSE DEFENDANT'S "TERMS OF USE" IS AN UNCONSCIONABLE CONTRACT OF ADHESION** ................... 8

        **1.   Defendant's Terms of Use Agreement Is An Unconscionable Adhesion Contract That Cannot Be Enforced** ................................................................. 9

| | | |
|---|---|---|
| | 2. | **Objections To Enforcement Of Arbitration Clauses Based On Unconscionability Have Been Upheld After The Ruling In *AT&T Mobility*** ................................................................. 10 |
| | 3. | **The Manner In Which Defendant's Terms Of Use Agreement Was Presented To Plaintiff Renders It Procedurally Unconscionable** ................................................................. 11 |
| | 4. | **The Limitless Scope Of Defendant's Arbitration Clause Renders It Substantively Unconscionable** ................................................................. 12 |
| **IV.** | **CONCLUSION** ................................................................................................. 13 | |

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Foundation Health Psychare Services, Inc.*
   24 Cal.4th 83 (2000) ............................................................................3, 9

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (U.S. 2011) .......................................................3, 5, 7, 10

*AT&T Technologies, Inc. Commc'ns Workers of Am.*,
   475 U.S. 643, 648 (1986) ..................................................................2

*Bischoff v. DirectTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002)..............................................8, 9

*Circuit City Stores v. Adams*,
   279 F.3d 889, 892 (9th Cir. Cal. 2002) .............................................4

*Davis v. O'Melveny & Myers*,
   485 F. 3d 1066 (9th Cir. 2007)..........................................................10

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681, 683 (1996) ..................................................................3

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279, 294 (2002)..................................................................2

*Engalla v. Permanente Medical Group, Inc.*,
   15 Cal. 4th 951, 972 (Cal. 1997).......................................................5

*Ferguson v. Countrywide Credit Undus., Inc.*
   298 F.3d 778, 782 (9th Cir. 2002) ....................................................3

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938, 947 (1995)..............................................................2, 4

*Flores v. Transamerica HomeFirst, Inc.*,
   93 Cal.App.4th 846, 853 (Cal. App. 1st Dist. 2001) .......................11

*Hamby v. Power Toyota Irvine*,
   798 F.Supp. 2d. 1163, 1165 (S.D.Cal. 2011)....................................10

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Hendrick v. Brown & Root, Inc.*,
  50 F. Supp. 2d 527, 533 (E.D. Va. 1999) ...................................................................... 2

*In Re Pizza Time Theater Sec. Lit.*,
  112 F.R.D. 15, 19 (N.D. Cal. 1986) .............................................................................. 4

*Kanbar v. O'Melveny & Myers*,
  849 F. Supp. 902, 909 (N.D. Cal. 2011) ................................................................ 10, 11

*Kilgore v. KeyBank, Nat. Ass'n*,
  718 F.3d 1052, 1058 (9th Cir. 2013) ........................................................................ 2, 3

*Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*,
  313 U.S. 487, 496, 61 S.Ct. 1020 (1941) ...................................................................... 4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614, 626 (U.S. 1985) ....................................................................................... 4

*Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*,
  89 Cal.App. 4th 1042, 1049-50 (Cal. App. 1st Dist. 2001) ........................................... 5

*Morse v. Servicemaster Global Holdings, Inc.*,
  2012 U.S. Dist. LEXIS 144691, *8-9 (N.D. Cal. Oct. 4, 2012) ................................ 2, 3

*Neal v. State Farm Ins. Companies*,
  188 Cal. App. 2d 690, 694 (Cal. App. 1st Dist. 1961) ................................................. 8

*Nelson v. Tiffany Industries, Inc.*,
  778 F.2d 533, 534 (9th Cir. 1985) ................................................................................. 5

*Parada v. Superior Court*,
  176 Cal. App. 4th 1554, 1573 (Cal. App. 4th Dist. 2009) ........................................... 12

*Republic of Nicaragua v. Standard Fruit Co.*,
  937 F.2d 469, 477-478 (9th Cir. 1991) .......................................................................... 2

*Rosenthal v. Great Western Fin. Securities Corp.*,
  14 Cal. 4th 394, 413 (Cal. 1996) ................................................................................... 5

*Shroyer v. New Cingular Wireless Servs.*,
  498 F.3d 976, 981 (9th Cir. Cal. 2007) ....................................................................... 10

**TABLE OF AUTHORITIES**    iv

*Stagner v. Luxxotica Retail North America, Inc.*,
 2011 WL 3667502 (N.D.Cal.) ...................................................................................7

*Stirlen v. Supercuts, Inc.*,
 51 Cal. App. 4th 1519, 1533 (Cal. App. 2st Dist. 1997) ................................9

*Szetela v. Discover Bank*,
 97 Cal. App. 4th 1094, 1099 (Cal. App. 4th Dist. 2002)..............................11

*Ticknor v. Choice Hotels Int'l, Inc.*,
 265 F.3d 931, 936-37 (9th Cir. Mont. 2001) ......................................................4

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
 363 U.S. 574, 582 (U.S. 1960) ..........................................................................3

*Volt Info. Scis. v. Bd. of Trs.*,
 489 U.S. 468, 474 (1989) ..................................................................................3

*Washington Mutual Bank v. Superior Court*,
 24 Cal.4th 906 (2001) .......................................................................................5

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
 25 Cal.App.3d 987 (Cal. App. 2d Dist. 1972) ..................................................6

*Zinser v. Accufix Research Institute, Inc.*,
 253 F. 3d 1180, 1187 (9th Cir. 2001) ................................................................5

**Statutes**

9 U.S.C. § 2 ..............................................................................................................4

9 U.S.C. § 4 ..............................................................................................................2

47 U.S.C. § 227 ........................................................................................................1

Cal. Civ. Proc. Code § 1281 ....................................................................................3

Cal. Civ. Proc. Code § 1670.5(a) ............................................................................9

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## I. INTRODUCTION

Plaintiff Nathan Hale ("Plaintiff") hereby submits this Memorandum of Points and Authorities in Opposition to Defendant John C. Heath Attorney at Law, PLLC, d.b.a. Lexington Law Firm's ("Defendant") Motion to Compel Arbitration.

Plaintiff filed the Complaint in the this action on July 28, 2015 against Defendant, seeking damages, injunctive relief, and any other available legal or equitable remedies, for Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). *See* ECF No. 1.

In response to this action, Defendant has filed the present Motion to Compel Arbitration on the grounds that the parties are bound by an arbitration provision found via a link on www.web2carz.com, which would purportedly redirect a consumer to Defendant's Terms of Use. Defendant contends that Plaintiff completed the registration form, providing his name, email address, mailing address, and telephone numbers, seeking a free consultation, and thereby allegedly agreeing to Defendant's Privacy Policy and Terms of Use. *See* Def. Motion, p. 2, 6-10. However, Defendant misstates that Plaintiff was directed to a website upon submitting a loan request to www.web2carz.com[1], where Plaintiff was asked if he would like to be contacted by a representative from Lexington Law Firm regarding credit repair. *See* Def. Motion, p. 2, 1-4. Further, Defendant's motion must fail as Plaintiff never intended to enter into an agreement with Defendant, there can be no finding of mutual assent or a valid, enforceable agreement between the parties. Moreover, the terms of Defendant's arbitration provision are limitless in scope and time, thereby rendering and purported arbitration provision procedurally and substantively unconscionable, and thus unenforceable. Therefore, Defendant's motion should be denied in its entirety.

---

[1] Defendant's own Exhibits A-B clearly show the colorful web2carz.com logo or header on all screenshots of the webpage that Plaintiff allegedly visited, and no obvious mention of Lexington Law Firm other than the fine print following the entry form on the web2carz.com website. *See* Exhibit B attached to the Declaration of John C. Heath ("Heath Decl.")

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** PAGE 1 OF 13

## II. LEGAL STANDARD

Although the Federal Arbitration Act ("FAA") states "district courts shall direct parties to proceed on issues as to which an arbitration agreement has been signed," the role of the Court is to first determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Before a court may grant a motion to compel arbitration, the Federal Arbitration Act ("FAA") requires the court to determine whether a valid agreement to arbitrate exists. *Morse v. Servicemaster Global Holdings, Inc.*, No. C 10-00628 SI, 2012 U.S. Dist. LEXIS 144691, *8-9 (N.D. Cal. Oct. 4, 2012) (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-478 (9th Cir. 1991)); 9 U.S.C. § 4. The "basic objective" of courts in deciding whether a dispute is appropriate for arbitration is to ensure that "arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (internal quotations omitted).

Therefore, the FAA "does not require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). It follows that "the question of arbitrability – whether [an] agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *Id*. Further, the presumption in favor of arbitration "does not apply in resolving doubts respecting whether the parties have reached an agreement respecting what they will arbitrate." *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 533 (E.D. Va. 1999). While the FAA creates a presumption in favor of

arbitration, that presumption "does not confer a right to compel arbitration of any dispute at any time." *Morse*, 2012 U.S. Dist. LEXIS 144691 at *9 (*citing Volt Info. Scis. v. Bd. of Trs.,* 489 U.S. 468, 474 (1989)). Thus, before the Court can compel Plaintiff to arbitrate her claims, it must determine whether a valid agreement to arbitrate exists and whether the arbitration provision in question extends to the dispute at issue in this matter. *See Kilgore*, 718 F.3d at 1058.

### III. ARGUMENT

#### A. ARBITRATION CANNOT BE COMPELLED UNDER THE FAA BECAUSE NO VALID OR ENFORCEABLE AGREEMENT EXISTED BETWEEN PLAINTIFF AND DEFENDANT

Arbitration agreements are contracts. Cal Civ. Proc. Code ("C.C.P.") § 1281 ("A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, **save upon such grounds as exist for the revocation of any contract**." (emphasis added)). Where grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *See Doctor's Assocs., Inc. v. Casarotto* (1996) 517 U.S. 681, 683; *Ferguson v. Countrywide Credit Undus., Inc.* (9th Cir. 2002) 298 F.3d 778, 782. Arbitration agreements "are neither favored nor disfavored, but simply placed on an equal footing with other contracts." *Armendariz v. Foundation Health Psychare Services, Inc*. (2000) 24 Cal.4th 83. Even under Federal law, arbitration agreements under the Federal Arbitration Act ("FAA") are contracts, they are subject to the same defenses as any other contract, which includes fraud, duress, unconscionability, or other general contract law defenses. *See AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740, 1745-46.

#### 1. Basic Contract Law Principles Relating To Contract Formation Apply In Determining The Existence Of A Valid Agreement To Arbitrate A Claim

The United States Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf*

*Navigation Co.*, 363 U.S. 574, 582 (U.S. 1960). Basic contract law principles relating to the formation of contracts are applied to determine the existence of a contract when courts are faced with determining the validity of an agreement to arbitrate a claim. *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (9th Cir. Cal. 2002). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (U.S. 1985).

In discussing the role of state law in federal arbitration analysis, the United States Supreme Court stated that "[w]hen deciding whether the parties agreed to arbitrate a certain matter [] courts generally [] should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (U.S. 1995). Although there is a liberal federal policy favoring arbitration agreements, the court must still look to *state* law to address issues concerning the validity and enforceability of contracts. *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 936-37 (9th Cir. Mont. 2001). The FAA contemplates that this Court will consider, in the first instance, whether the Arbitration Agreement is valid under California state law. 9 U.S.C. § 2.

Therefore, the general policy in favor of arbitration discussed in Defendant's moving papers does not apply *without first finding a valid agreement to arbitrate.* The Court must review the contract according to the principles of the state of California because Plaintiff resides here, it is the forum state, and it is where Defendant's Terms of Use agreement was *allegedly* entered into between the parties.[2]

---

[2] Plaintiff anticipates that Defendant may attempt to argue in his Reply brief that the rules and laws of the State of Utah and other applicable federal laws should govern the interpretation and enforcement of the arbitration provision. However, a federal court sitting in diversity must look to the law of the forum state to determine what law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020 (1941); *Ticknor v. Choice Hotels International, Inc.,* (9th Cir. 2001) 265 F.3d 931, 936-937. The court in *In Re Pizza Time Theater Sec. Lit.,* 112 F.R.D. 15, 19 (N.D. Cal. 1986) stated, "'California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest in having its

## 2. Plaintiff Cannot Be Bound By Defendant's Arbitration Provision Because There Was No Mutual Assent Between Plaintiff And Defendant When The Parties Purportedly Entered Into The Agreement To Arbitrate Plaintiff's Claims

Defendant fails to meet its burden of showing that Plaintiff entered into an agreement to arbitrate the claims that are the subject of this action. Justice Thomas in his concurring opinion as part of the 5-4 majority, confirmed in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (U.S. 2011), that *mutual assent* is required before an arbitration clause can be enforced. *Id.* at 1755. Because the existence of an agreement is a statutory prerequisite to granting a motion to compel arbitration, Defendant here bears the burden of proving the existence of an agreement by a preponderance of the evidence. *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 413 (Cal. 1996); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (Cal. 1997).

### a) The Inconspicuous Nature Of The Arbitration Provision Precludes A Finding Of Mutual Assent

There was no mutual assent to the arbitration provision given its inconspicuous nature, and due to the fact that Plaintiff was not made aware of it until after Plaintiff filed the Complaint initiating this action when Defendant sought to compel arbitration. There is a recognized exception in the law for failing to read a contract "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal.App. 4th 1042, 1049-50 (Cal. App. 1st Dist. 2001). Plaintiff should not be bound to the arbitration provision due

---

own law applied' [quoting from] *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533, 534 (9th Cir. 1985)." That analysis was also confirmed in *Washington Mutual Bank v. Superior Court,* 24 Cal.4th 906 (2001). In addition, should Defendant attempt to impose a law other than that of the forum state, *[Defendant] bears the burden of proof* that the other state's law applies. *Zinser v. Accufix Research Institute, Inc.,* 253 F. 3d 1180, 1187 (9th Cir. 2001). Should Defendant attempt to raise this issue in his Reply brief, it should not be considered by the Court as it would violate Plaintiff's right of Due Process by not allowing Plaintiff an opportunity to respond to this argument.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** PAGE 5 OF 13

to the scope of Defendant's Terms of Use, as well as the manner in which the arbitration provision was presented in Defendant's Terms of Use as Plaintiff was on a third party website and had no intention of entering into an agreement with Defendant, much less any intention to agree to arbitration of claims against Defendant. *See* Declaration of Nathan Hale ("Hale Decl.") ¶¶ 7-8. At no point did Plaintiff visit or view Defendant's website to complete a registration form, nor has Plaintiff had a business relationship with Defendant or intended to seek Defendant's services while using www.web2carz.com. *Id*. ¶ 4.

In *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987 (Cal. App. 2d Dist. 1972), an arbitration clause was included in an "Acknowledgement of Order" form, buried in many paragraphs of fine print. *Id*. at 989-90. The court refused to find that the party opposing arbitration assented to the purported agreement, stating, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 993. The court relied on the fact that the arbitration provision was inconspicuous, due in part to the small print of the Acknowledgement of Order, and the plaintiff did not learn of the arbitration provision until after arbitration was demanded. *Id.* at 996.

Similarly here, Plaintiff was not aware of the inconspicuous contractual provisions of Defendant's Terms of Use; namely, the arbitration provision, which was hidden in the Terms of Use link contained on web2carz's website, which Plaintiff would have had to click and read to understand that the form on web2carz's website would unknowingly subject him to the terms of a separate company, Lexington Law Firm. At the time Plaintiff viewed the web2carz website, he did not realize that this third party website was in any wat related to Defendant. Hale Decl. ¶ 5. Furthermore, Plaintiff was not made awae that he could be forced to submit any dispute or claims against Defendant to arbitration as a result of his use of www.web2carz.com. *Id*.

A reasonable consumer viewing the forms on web2carz's website would not think that the information entered into the form would be going to Defendant, as Plaintiff was not redirected to Defendant's website to fill out the information for a free consultation, and Lexington Law Firm's name only appears in small print which does not in any way stand out on the webpage or call the user's attention to it so as to put Plaintiff or any reasonable consumer on notice that the information entered into the website's form would be for Lexington Law Firm rather than the current web2carz website. Thus, it is clear that there can be no demonstration of mutual assent to enter into Defendant's arbitration provision as Plaintiff was unaware and did not intend to enter into an agreement with Defendant while submitting information on web2carz.com, a third party website.

### b) The Absence Of Plaintiff's Intent To Enter Into The Arbitration Clause Precludes A Finding Of Mutual Assent

In *Stagner v. Luxxotica Retail North America, Inc.*, 2011 WL 3667502 (N.D.Cal.), a post-*AT&T Mobility* case, the Court found there was *no agreement* to arbitrate and no assent was intended because the plaintiff had signed only one of two agreements. *Id*. at *2. The plaintiff had submitted a declaration that she had not intended to agree to any arbitration agreement. *Id*. at *4. The Court cited to *AT&T Mobility* to enforce the principle that it is the parties' intent that is supposed to control in arbitration clauses: "Arbitration is a matter of contract, and the FAA requires courts to honors parties' expectations." *Id.*, at *3.

Similarly here, Plaintiff was not informed of the provisions contained in Defendant's Terms of Use, nor was Plaintiff alerted to an arbitration provision or clause therein. Hale Decl. ¶ 6. Furthermore, neither Defendant nor any of Defendant's agents ever explained to Plaintiff that his use of web2carz.com would cause any future potential claims or dispute with Defendant to be submitted to arbitration. *Id*. Providing an arbitration provision buried in a lengthy online agreement available only via a link in the fine print on a third party website,

without directing attention to the provision or informing the consumer about its importance, does not establish mutual assent to the agreement. Further, it does not establish Plaintiff's assent to the agreement in relation to Defendant. It simply shows that Defendant, the party with disproportionate bargaining power, unilaterally deemed that Plaintiff would be bound by the arbitration provision by allegedly submitting his information on web2carz.com.

Thus, Defendant cannot insist that Plaintiff assented to Defendant's arbitration provision. Furthermore, the fact that Plaintiff utilized web2carz.com or sought a free consultation, ostensible offered by [www.web2carz.com](www.web2carz.com) rather than Defendant, does not establish a meeting of the minds between the Plaintiff and Defendant or any mutual assent to be bound by arbitration through this contract drafted by Defendant to maximize potential revenue while protecting only its own interests.

### B. THE ARBITRATION PROVISION IS UNENFORCEABLE BECAUSE DEFENDANT'S "TERMS OF USE" AGREEMENT IS AN UNCONSCIONABLE CONTRACT OF ADHESION

Plaintiff cannot be bound by the arbitration provision within Defendant's Terms of Use because it is a contract of adhesion and any ambiguous terms contained therein must be construed against Defendant, the party responsible for drafting it. A contract of adhesion "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm Ins. Companies*, 188 Cal. App. 2d 690, 694 (Cal. App. 1st Dist. 1961). The court in *Bischoff v. DirectTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) held that the Customer Agreement signed by the plaintiff in that case was a contract of adhesion as it was a form contract imposed by the party with superior bargaining power, and the plaintiff could not negotiate the terms, but rather, could only take them or leave them. *Id.* at 1107.

1    Similarly, here Defendant's Terms of Use, which was entirely drafted by
2 Defendant, is clearly a contact of adhesion given that the only option provided to
3 Plaintiff is to accept or reject it in its entirety. *See* Def. Motion, p. 3-4. Even if
4 Plaintiff had been made aware of Lexington Law Firm's connection to the
5 consultation form on www.web2carz.com, the take-it-or-leave-it nature of
6 Defendant's Terms of Use agreement, which takes away any negotiating power
7 from Plaintiff, clearly renders it an adhesion contract.

### 1. Defendant's Terms Of Use Is An Unconscionable Adhesion Contract That Cannot Be Enforced

Under California law, "[i]f the court as a matter of law finds the contract or any clause of the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." C.C.P. § 1670.5(a).

As discussed above, the Terms of Use, by virtue of being drafted solely by Defendant, the party with superior bargaining power over Plaintiff, is an adhesion contract. "An adhesion contract is unconscionable when both procedural unconscionability, meaning surprise or distress stemming from unequal bargaining power, and substantive unconscionability, meaning overly harsh or one-sided terms are present." *Bischoff*, 180 F. Supp. 2d at 1107. "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.,* 51 Cal. App. 4th 1519, 1533 (Cal. App. 2st Dist. 1997). However, *procedural and substantive unconscionability need not be present in the same degree*; the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to reach the conclusion that the term is unenforceable, and vice versa. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (Cal. 2000).

### 2. Objections To Enforcement Of Arbitration Clauses Based On Unconscionability Have Been Upheld After The Ruling In *AT&T Mobility*

*AT&T Mobility LLC* does not hold that there are to be no more unconscionability arguments raised in response to arbitration agreements. As held in *Hamby v. Power Toyota Irvine*, 798 F.Supp. 2d. 1163, 1165 (S.D.Cal. 2011), "*AT&T Mobility LLC* does not stand for the proposition that a party can never oppose arbitration on the ground that the arbitration clause is unconscionable." citing *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981 (9th Cir. Cal. 2007) ("It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable.")

The court in *Kanbar v. O'Melveny & Myers,* 849 F. Supp. 902, 909 (N.D. Cal. 2011), also made it clear that all the rules regarding unconscionability should not be disregarded after *AT&T Mobility*. *Kanbar*, 849 F. Supp. at 909. The defendant in *Kanbar* requested that the court order arbitration based on essentially the same arbitration clause that had previously been found to be unconscionable in the case, *Davis v. O'Melveny & Myers*, 485 F. 3d 1066 (9th Cir. 2007), based simply on the argument that *AT&T Mobility* voided the 9th Circuit's prior finding of unconscionability. *Kanbar*, 849 F. Supp. at 904. The court disagreed with the defendant, finding that the 9th Circuit's earlier analysis was not abrogated by *AT&T Mobility*. *Kanbar*, 840 F. Supp. at 904-05. The court in *Kanbar* held:

> In *Concepcion*, the Supreme Court specifically noted that the FAA 'permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' [although] not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' citing *AT&T Mobility*, 131 S. Ct. at 1746.

Based upon *AT&T Mobility*'s discussion of the issue of unconscionability, the court in *Kanbar* noted that, "In short, arbitration agreements are still subject to

unconscionability analysis . . . The doctrine of unconscionability can override the terms of an arbitration agreement and the parties' expectations in connection therewith." *Kanbar*, 849 F. Supp. at 909. It was noted that only if the provision found to be unconscionable 'interferes with [the] fundamental attributes of arbitration' – in particular, its informality, expeditiousness, and relative inexpensiveness" will the rule be preepted by the FAA. *Id.* at 912, citing *AT&T Mobility,* 131 S. Ct. 1740.

### 3. The Manner In Which Defendant's Terms Of Use Was Presented To Plaintiff Renders It Procedurally Unconscionable

"Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1099 (Cal. App. 4th Dist. 2002). As regarding the issue of procedural unconscionability, "A finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (Cal. App. 1st Dist. 2001).

As explained above, Defendant's Terms of Use and the purported arbitration provision were drafted entirely by Defendant and provided no room for negotiation - even if Plaintiff had seen the mention of Lexington Law Firm on the third party web2carz website or clicked the link to Defendant's Terms of use - requiring Plaintiff to either accept or reject it in its entirety. *See* Def. Motion, p. 3-4. This is further compounded by the fact that the purported arbitration provision, buried in Defendant's Terms of Use, did not have a heading indicating Plaintiff could be subject to binding arbitration or any option to opt-out or relieve Plaintiff from being bound to arbitration if Plaintiff had known of or seen Defendant's Terms of Use.

### 4. The Limitless Scope Of Defendant's Arbitration Clause Renders It Substantively Unconscionable

"Substantive unconscionability addresses the impact of the term itself, such as whether the provision is so harsh or oppressive that it should not be enforced." *Szetela* at 1099. Here, Defendant's arbitration provision is extremely broad in scope in time. *See* Def. Motion, p. 3-4:

> YOU AGREE TO ARBITRATE **ALL** CLAIMS BETWEEN YOU AND LEXINGTON ON AN INDIVIDUAL BASIS ONLY AND NOT AS PART OF **ANY** CLASS. A 'CLAIM' IS **ANY** CASE, CONTROVERSY, DISPUTE, TORT, DISAGREEMENT, LAWSUIT, LEGAL ACTION, OR CLAIM **NOW OR HEREAFTER** PENDING BETWEEN YOU AND LEXINGTON, INCLUDING BUT NOT LIMITED TO **ANY** ALLEGED **STATE OR FEDERAL** STATUTORY VIOLATION, OR **ANY** DISPUTE OVER THE INTERPETRATION OF THE WEBSITE TERMS OR THE ARBITRABILITY OF **ANY** CLAIM PURSUANT TO THE WEBSITE TERMS. THIS AGREEMENT TO ARBITRATE GOVERNS **ALL PAST, CURRENT AND PROSPECTIVE INTERRACTIONS** WITH LEXINGTON. YOU AGREE THAT YOU ARE **WAIVING ALL RIGHTS** TO: (A) A TRIAL BY JURY; (B) PARTICIPATE IN A CLASS ACTION LAW SUIT OR CLASS ACTION ARBITRATION; AND (C) BRING AN ACTION AGAINST LEXINGTON IN A COURT OF LAW. (emphasis added).

The above-mentioned arbitration provision from Defendant's Terms of Use is clearly extremely oppressive in that its broad sweeping terms seek to bind Plaintiff to arbitration for perpetuity for any and all imaginable claims, and goes so far as to unfairly include a terms to require Plaintiff and other consumers to unknowingly waive their right to trial by a jury. Such harsh and oppressive terms, which were even more unfair as they were also hidden in a link on a third party website, simply cannot be enforced against Plaintiff or others in Plaintiff's shoes.

"Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations." *Parada v. Superior Court*, (2009) 176 Cal. App. 4th 1554, 1573 (Cal. App. 4th Dist. 2009). If the Court were to uphold the arbitration provision, it would essentially bind

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Plaintiff and any other consumers who use web2carz.com and seek what appears as a free consultation offered by web2carz.com, to arbitration for their entire lifetime for any and all types of claim against Lexington Law Firm, regardless of whether they ever intend to have any interaction or relationship with Defendant. Upholding the arbitration provision would also deny Plaintiff the opportunity to ever sever any relationship Plaintiff may have had or may have in the future with Defendant.

The oppressive nature of Defendant's Terms of Use, taken together with the manner in which it was allegedly entered into, clearly demonstrate that Plaintiff was deprived of any opportunity to willingly or knowingly enter into the contract. Given that the Defendant's Terms of Use is an adhesion contract which is both procedurally and substantively unconscionable, Plaintiff should not be bound by its terms.

## IV. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests the Court to deny Defendant's Motion to Compel Arbitration of Plaintiff's claims and also deny Defendant's request to dismiss or stay this action.

Dated: November 9, 2015          Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**


By:  /s/ Abbas Kazerounian
    Abbas Kazerounian, Esq.
    Mona Amini, Esq.
    Attorneys For Plaintiff