# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN HALE,<br><br>　　　　　　　Plaintiff,<br>vs.<br>JOHN HEATH,<br><br>　　　　　　　Defendant. | CASE NO. 15cv1676-LAB (JMA)<br><br>**ORDER ON MOTION TO COMPEL ARBITRATION** |

Plaintiff Nathan Hale filed this putative class action bringing claims under the Telephone Consumer Protection Act against attorney John Heath, doing business as Lexington Law Firm. Hale's claims depend on allegations that Heath called him without his consent using an automatic telephone dialing system.

Heath then filed a motion to compel arbitration. No class has been certified, nor is a motion for class certification pending.

**Heath's Motion**

Heath presents evidence that on March 11, 2015, Hale visited the website web2carz.com, which he used to request a car loan. After submitting his loan request, the evidence says, he was directed to an acknowledgment web page, which asked if he would like to contact or be contacted by a representative from the Lexington Law Firm about credit repair. The evidence also suggests he completed registration and clicked a button marked

"Get Your Free Consultation." A link to the terms of use appeared above the link. The terms included the arbitration clause that Heath now seeks to enforce.

The only part of this evidence Heath disputes is whether he was directed to the second web page — the one regarding credit repair — and whether he completed and submitted the credit repair registration. His primary arguments are that he never entered into the agreement, or that it is unenforceable. Specifically, he argues there was no mutual assent to the agreement both because it was too inconspicuous and because he did not intend to be bound by it. He also argues it is a contract of adhesion that is both procedurally and substantively unconscionable.

**Legal Standards**

The parties agree, as does the Court, that the agreement is governed by the Federal Arbitration Act (FAA). Under the FAA, arbitration agreements are just as valid and enforceable as other contracts. *See* 9 U.S.C. § 2. If an agreement falls under the FAA, the Court "must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *see also* 9 U.S.C. §§ 2, 4.

The FAA embodies a "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Any ambiguities in the language of an agreement should be resolved in favor of arbitration. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). But the policy favoring arbitration does not apply to the question of whether there is a valid arbitration agreement in the first place. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). Rather, the Court applies ordinary state contract law principles to make this determination. *Waffle House*. 534 U.S. at 293; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Arbitration agreements, therefore, are "subject to all defenses to enforcement that apply to contracts generally." *Id*.

When deciding any factual issues raised in a motion to compel arbitration, the Court applies a summary judgment-like standard. *See Amaya v. Spark Energy Gas, LLC*, 2016 WL 1410755, slip op. at *3 (N.D. Cal., Apr. 11, 2016). The burden of proof falls on the party asserting jurisdiction and contesting arbitration. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

**Discussion**

### Which State Law Governs the Contract

Hale argues that the law of California, where he allegedly entered into the contract, governs. Heath, citing the terms of service, argues that federal or Utah law governs. Because federal arbitration law generally looks to state contract principles to determine if a contract was validly entered into, this would mean the Court would apply Utah law.

Whether the agreement was validly entered into is a threshold question. If it was not, its choice of law provisions also would not apply. The Court therefore initially assumes California law applies. But, as discussed below, it does not really matter which state's law applies, because all lead to the same result.

### The Evidence

Nearly all the evidence was provided by Heath. Hale's only evidence consists of his own declaration. He admits he visited web2carz.com, and does not dispute the authenticity of the web pages as portrayed in Heath's exhibits. He denies being directed to the second page, which contained a registration form for credit repair services. He denies completing such a registration form, and says he never used or intended to use the credit repair services offered there. The remainder of his declaration deals with his own subjective intentions and understanding of the legal relationship between Heath and himself.

The evidence does not show, as a matter of law, whether Hale visited the second web page, completed the registration, and submitted it. Hale himself denies doing any of this, while Heath has submitted documentary evidence suggesting he did. For the purpose of analyzing the motion, the Court will assume Heath's evidence is correct. If, assuming Heath's version of the facts is correct, the motion would succeed, then the Court will hold an

evidentiary hearing.  *See* 9 U.S.C. § 4.  But if the motion would fail regardless, there is no need for a hearing.

The parties' dispute focuses on the page with the credit repair form. (Docket no. 10-1 at 25, 27.)  The registration section is followed by an explanation: "By clicking 'Get Your Free Consultation' I agree to abide by electronic signature to . . . the Privacy Policy and Terms of Use." "Privacy Policy" and "Terms of Use" are highlighted in blue, and link to other pages. Below this is the marked "Get Your Free Consultation." The explanation is in the same font and size as most of the rest of the form, although it is not printed in boldface as most of the rest of the form is. The "Terms of Use" link leads to the "Terms of Use" page, which includes the arbitration clause that Heath seeks to enforce. (*See* Docket no. 10-1 at 31–32.)

**Mutual Assent**

Hale contends there was no mutual assent, for two reasons.  First, he argues the arbitration provision was too inconspicuous and there was nothing to suggest he should have read it.  Second, he argues he did not intend to enter into any such agreement, and renews his argument that he never saw the credit repair web page.

As Hale recognizes, mere failure to read an agreement does not render it ineffective. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (Cal. App. 1 Dist. 2001).  He relies on a recognized exception, however, which excuses failure to read contractual provisions that are inconspicuous and buried in a document that does not appear to be a contract.  *See id.* at 1049–50; *Windsor Mills, Inc. v. collins & Aikman Corp.*, 25 Cal. App. 3d 987 (Cal. App. 2 Dist. 1972).

Internet agreements generally come in two types, "clickwrap" or "click-through" agreements, and "browsewrap" agreements. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004)). The former requires the user to manifest assent to the terms and conditions before proceeding. *Id*.  The latter usually involves terms and conditions posted on the website via a hyperlink somewhere on the screen, which the user supposedly assents to merely by using the site. *Id*. California courts often treat browsewrap agreements as inconspicuous and

refuse to enforce arbitration clauses. *Id*. at 1176 (citing cases).  On the other hand, courts have "consistently enforced" browsewrap agreements that resemble clickwrap agreements — *i.e.*, agreements requiring that the user is required to affirmatively acknowledge assent to its terms before the user proceeds. *Id*. at 1176–77.

Here, the form that Hale completed and submitted conspicuously mentioned that he was agreeing to be bound by the terms of use, which were hyperlinked in color-contrasting text.  Unlike agreements in the case Hale cites, this agreement does not purport to be something else, and does not mislead users as to its nature.  This is either a true clickwrap agreement, or else a browsewrap agreement that resembles one.  The agreement conspicuously mentions that users are agreeing to be bound by the terms before they request a credit repair consultation. *See id*. at 1178–79 (distinguishing a clickwrap case). A user completing the form and clicking the button would have actual notice of the agreement, and would be affirmatively assenting to it.

While some agreements will not let users proceed until they have actually looked at the terms of service, it does not appear such precautions are necessary. *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal., 2011), for example, concluded that where a user was provided with an opportunity to review the terms of service in the form of a hyperlink immediately adjacent to the acceptance button, the user had agreed to the terms and was bound by them.  More recent decisions are in agreement. *See, e.g., Mohamed v. Uber Technologies, Inc.*, 109 F. Supp. 3d 1185, 1195–97 (N.D. Cal. 2015).

The fact that the terms and conditions were located on a different page, accessible by hyperlink, makes no difference here.  All that matters is that the user is prompted to review the terms, and given the opportunity to do so. *Id*. at 1197 (citing authority).

Hale renews his argument that he never visited this web page and never clicked on the button. If he is correct, he could not have seen and did not assent to the terms of use. But assuming, *arguendo*, that he did, the arbitration agreement was sufficiently conspicuous that his submission of the form amounted to his assent to it.

/ / /

**Unconscionability**

Hale also argues that, even if he validly entered into the agreement, it is both substantively and procedurally unconscionable. Both are required before an agreement will be deemed unenforceable. *See Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1107 (C.D. Cal., 2002). The two are evaluated on a sliding scale; more of one will compensate for less of the other. *Id.*; *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993).

Defendants drafted the agreement and presented it to the public — including Hale — on a take-it-or-leave it basis. Under California law, it is therefore a contract of adhesion. *See Bischoff*, 180 F. Supp. 2d at 1107. Hale makes a great effort to show the agreement was procedurally unconscionable. Procedural unconscionability, however, involves an element of surprise, that is, the parties' reasonable expectations and the degree to which the contract clearly disclosed its terms. *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002). Assuming Hale did visit the credit repair web page, completed the form, and clicked the button, it is doubtful there was any unfair surprise. He was given fair notice to review the terms of service before clicking. And had he done so, he would have seen the arbitration clause in large, boldface print on page 2, beginning with the phrase "YOU AGREE TO ARBITRATE ALL CLAIMS BETWEEN YOU AND LEXINGTON . . . ." (Docket no. 10-1 at 32.) Even if the agreement was procedurally unconscionable to some degree, it was not greatly so. But even if Hale had met his burden of establishing procedural unconscionability, he fails to show the agreement was substantively unconscionable at all.

Under California law, substantive unconscionability "arises when a provision is overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1206–07 (N.D. Cal. 2015). Hale does not argue the arbitration provision is one-sided, and this issue is waived. Rather, he contends it is overly harsh or unduly oppressive because it is extremely broad in scope, requiring him to arbitrate all conceivable claims he may have against Heath. (Opp'n to Mot. to Compel Arbitration, 12:1–13:12.) He points out that this includes a waiver of jury trial, and that he is agreeing to arbitrate any future claims of any kind he may have against

Defendant. But arbitration <u>always</u> involves a waiver of jury trial rights. And arbitration clauses typically deal with future unknown claims. This is, at heart, an objection that requiring a party to submit all disputes to arbitration is unfair or oppressive.

The Supreme Court's decision in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) made clear that state unconscionability doctrine cannot be applied in a way that disfavors arbitration. *Id*. at 341. This means parties cannot rely on "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 339. The fact that this clause is written very broadly is not at all unusual. *See, e.g., Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 512 (9th Cir. 1987) (enforcing arbitration clause that governed "any grievance or controversy affecting the mutual relations" of the parties); *Piccini v. Wells Fargo Auto Finance, Inc.*, 2009 WL 307276, at *2 (D. Ariz., Feb. 9, 2009) (citing authority for the principle that parties may draft arbitration clauses broadly, so as to govern all disputes between them). And broadly-written arbitration clauses are not disfavored. *See, e.g.*, *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (explaining that the preference for arbitration is even greater when the arbitration clause is broad). Because Hale's defense is specifically directed at the alleged unfairness of an extremely broad arbitration clause and the alleged oppressiveness of arbitration, *AT&T Mobility*'s holding makes clear it cannot succeed.

The Court therefore finds the arbitration agreement is not unconscionable.

**Determining Whether Hale Agreed to the Terms of Use**

The Court thus far has assumed for the purpose of analysis that Defendants' allegations are true, and that Hale did visit the credit repair page, completed the form, and clicked the button to submit his application. Assuming he did these things, the arbitration agreement is enforceable.

Because the evidence is in conflict, they cannot be resolved on the pleadings. Rather, the Court must hold a summary trial on this one issue. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial

1 thereof.") Under § 4, if either party timely invokes the right to jury trial, the issue must be
2 submitted to a jury; otherwise, the issue can be tried to the Court without a jury.

3 Neither party invoked the right to jury trial in connection with the motion to compel
4 arbitration. But Hale did make a jury demand in the complaint. Courts are divided about
5 whether this is sufficient. It appears most do, although some read § 4 as requiring an
6 invocation of the right in connection with the motion. *Compare Alvarez v. T-Mobile USA,*
7 *Inc.*, 2011 WL 6702424 at *9 (E.D. Cal., Dec. 21, 2011) (citing cases requiring a demand on
8 or before the return day of motion to compel arbitration) *with Hutchins v. DIRECTV Customer*
9 *Serv., Inc.*, 2012 WL 1161424, at *4 (D. Idaho, Apr. 6, 2012) (construing plaintiff's jury
10 demand in amended complaint as a demand for jury trial on the arbitration issue); *Coughlin*
11 *v. Shimizu America Corp.*, 991 F. Supp. 1226, 1228 (D. Or. 1998) (agreeing with plaintiff's
12 argument that jury demand in the complaint sufficed as a request for jury trial on the limited
13 issue of whether the parties entered into an arbitration agreement).

14 The Court therefore intends to hold a jury trial on the issue of whether Hale entered
15 into the arbitration agreement. The factual issues to be tried are whether he visited the
16 credit repair web page, whether he completed the form, and whether he clicked the button
17 to submit his application. Unless otherwise ordered, the trial will commence on **Tuesday,**
18 **August 9 at 9:00 a.m.** Each side shall be limited to two hours, including direct examination,
19 cross examination, and opening and closing statements. To prepare for this, the parties are
20 **ORDERED** to appear telephonically for an initial pretrial conference on **Monday, July 25,**
21 **2016 at 4:00 p.m.** To do so, they should arrange to conference in on the same phone line,
22 and then call the main chambers number.

23 If, however, the parties are willing to stipulate to a court trial, they may do so by filing
24 a joint motion.

25 **IT IS SO ORDERED**.
26 DATED: July 14, 2016

27
28 *[signature]*
**HONORABLE LARRY ALAN BURNS**
United States District Judge